## Abraham D. Skinner and Joseph T. Grimes v. Peter Mulligan.

1. MEASURE OF DAMAGES—*Under Special Counts*—Under a special count for a breach of warranty of goods sold, the measure of damages is the difference between the value of the goods as warranted, and their value with the defects shown.

2. SAME—*Sale Rescinded.*—A vendee of goods can recover the contract price paid, only by showing that the contract of sale has been rescinded, and upon the promise, in such case implied, to return the price as money had and received by the defendant for his use.

3. CONTRACTS—*Implied and Expressed.*—The law never implies a promise where one expressed, which in terms governs the case, is still subsisting and enforcible.

4. SALES—*Rescission and Breach of Warranty.*—A warranty is not a part of a contract of sale, except as a part of the consideration received for the price paid. The vendee's remedy upon a sale is on the warranty, without which he has none, and his right of recovery is limited to the amount of depreciation due to the breach. He can not lawfully compel the vendor to take back the property and return the price paid.

**Memorandum.**—Assumpsit. In the Circuit Court of Champaign County; the Hon. FRANCIS M. WRIGHT, Judge, presiding. Trial by jury; verdict and judgment for plaintiff; appeal by defendants. Heard in this court at the May term, 1894. Reversed and remanded. Opinion filed November 30, 1894.

W. A. PERKINS, attorney for appellants.

John J. Rea, attorney for appellee.

Mr. Justice Pleasants delivered the opinion of the Court.

In September, 1892, appellee, a farmer residing two and a half miles from Tolono, bought of appellants, who were partners, dealing in farming implements at that place, a new buggy which they warranted for one year, to be made of good material, in a workmanlike manner and well painted, and agreed to make good any defects in either particular during that time.    Before purchasing he examined it with full opportunity, and upon his promise to pay $80 for it in thirty days if it should prove satisfactory, was allowed to take it away.    At the end of that time he told them it was all right, and paid for it as he had agreed.    After using it through fall, winter and spring, nine and a half months, without complaint, he brought it to their place of business in June and told them "it wasn't filling the warranty" because the paint was coming off in places and the tires were somewhat loose, and wanted them to "take it back" meaning thereby, as appears from his testimony, that they should keep the buggy and return the price he had paid for it.    This they declined to do, but offered to repair the defects and make it satisfactory by soaking the wheels in linseed oil and painting it up. Upon his refusing that offer they proposed to replace the buggy with another which they showed him, but he refused that also because it was a jobber's buggy and priced at $75, though the one he had was a jobber's buggy and appellants claim that the difference in price was no more than a fair offset for his use of it.    He intended to leave it there at that time, but they then had no room for it and desired to learn what the jobbers at Peoria, of whom they purchased, would do about it, and therefore he consented to keep and use it a while longer.    So the matter stood until some time in July, when he drove up in front of a blacksmith shop just opposite their warehouse, and unhitched.    Leaving it there he crossed over and saw Grimes, who said, "We are ready to accept that buggy, we will take it back now," to which he

replied, " All right, that's it across the street there." He was going to pull it across, but Grimes said, " Never mind, we haven't room here now; as soon as we clear away we will take it in; " and that was the last he saw of it. Such is appellee's version, but Grimes denied that he said they would " accept " or " take back " the buggy, though he admits that on the next morning he put it under their shed. And appellee admits that Grimes then also said they would give him another buggy; that they had just received an $85 one which was in a crate; that he said to Grimes, " Put that one back there and I will come down in a day or so and look at it; " but Grimes objected and offered him still another $75 one, which he refused; that Skinner, who had made the sale to him, was then absent, but expected to be back on the following Monday, and that Grimes having said in the further conversation about the one in the crate that he " didn't want to interfere between him and Skinner on this deal," he replied that he would come down and see him; that he did come down and have a talk with him, the result of which he stated as follows : " He pulled right off and said they wouldn't do no such thing, but they would send the buggy off and have new wheels put on it and have it painted up, and I could take that or do as I pleased."

Within a day or two thereafter he brought this suit, declaring in two special counts on the warranty and the common counts; to which the defendants pleaded the general issue. A verdict was returned for the plaintiff for $80, on which judgment was rendered.

Under the special counts he could rightfully recover only the actual damages caused by the breach, the measure of which would be the difference between the value of the buggy as warranted and its value with the defects shown. There was no attempt to show the amount of this difference. Plaintiff contented himself with proof of the warranty, breach and return of the property. According to his own statement the buggy was all right except as to chipping off of the paint and the loosening of the tires. The paint was chipping off only on the axle, running gear and shafts, and

only in spots here and there, probably a quarter of an inch square. This did not occur until late in the spring, and no shrinkage of the wheels was observed before the weather became warm. If this condition was wholly due to defect of material or workmanship, which was contested upon strong and uncontradicted evidence, the damage could not have been properly presumed or inferred to be equal to the price. Hence, if the assessment was made under the special counts or either of them, it should have been set aside on the motion for a new trial, as being unsupported by the evidence.

But it seems clear from the evidence and the argument that plaintiff was not seeking damages for the alleged breach of the warranty, but the price he had paid. This he could recover only by showing that the contract of sale had been rescinded, and upon the promise, in such case implied, to return the price, as money had and received by the defendants for his use. The recovery here must be sustained, if at all, under the common count on such implied promise.

But the law never implies a promise where one expressed, which in terms governs the case, is still subsisting and enforcible. The question, then, is whether the contract of sale had been rescinded.

If so, it must have been either with the consent of appellants or for reasons which the law allows as sufficient without it.

The evidence bearing upon the question of their consent is fully set forth in the foregoing statement. That is a question of intention, and we are clear that this evidence not only fails to show that they ever so intended, but does show affirmatively that they did not. Conceding that Grimes said they were ready to accept the buggy, to take it back now, it is evident he did not mean that they would consent to a rescission of the sale and return the price they had received; for according to the testimony of appellee himself he added that they would give him another, which he immediately pointed out. And upon appellee's proposing to take a different one he objected, and the matter was left to

be settled between appellee and Skinner, who failed to agree on any terms of settlement. Skinner's *ultimatum* was to repair the buggy in the manner indicated, and there was never a word about rescinding the sale, returning the price, or taking the buggy back absolutely.

Could appellee rescind it without their consent? The sale was of a specific chattel, and the warranty related not to title but quality only. On the part of the vendors the contract was to deliver the chattel and give the warranty; on that of the vendee, to pay in consideration thereof the sum of $80. They did deliver it and give the warranty and he paid the price agreed on. Thereby the title passed and the contract was fully executed. Appellee received for his money paid, all that by the terms of the contract he was to receive. Thus there was no breach of that contract on the part of the appellants. Nor is it charged that any fraud was practiced by them in connection with it; nor complained that on the part of appellee there was any misunderstanding of its terms or mistake as to the subject of it. Upon what principle, then, could he rescind it without their consent? The claim is that it was broken by them, and for that reason, upon returning the subject of his purchase he could reclaim the price. But what was broken, if anything, was the warranty, which was not a part of the contract of sale except as a part of the consideration he received for the money he paid. He knew it might turn out to be broken and for that reason only he took it, as a means and ground of recovery for whatever damage he should sustain from any defect specified in it. Without it he would have had none, and with it he had no other. His remedy was upon the warranty alone and his right of recovery was limited to the amount of depreciation due to the breach. He could not lawfully compel appellants to take back the buggy and return the price paid. There was, therefore, no such cause of action shown as was alleged in the common count. Crabtree v. Kile, 21 Ill. 180; Doane v. Dunham, 65 Id. 512; Owens v. Sturges, 67 Id. 366; Kemp v. Freeman, 42 App. 500; Addison, Cont., Sec. 632.

The cases relied on for appellee, in which, though the contract has been executed the vendee is allowed to rescind it, return the property and recover the price as money had and received to his use, are within the exceptions recognized by those above cited. These include those in which the vendor has acted fraudulently, or the defects in quality warranted against, are such as to defeat entirely the known object of the purchase. Thus in Sparling v. Marks, 86 Ill. 125, the vendor sold what he knew was a worthless crystal, but warranted to be a diamond, a gross, actual fraud; and in Hanson v. Busse, 45 Id. 499, which was a suit against the vendee for the price, the contract was for apples sold in barrels by sound samples and warranted to be as good, but found to be unmerchantable and worthless from decay, and immediately returned. Moreover, in that case the contract was executory.

The court instructed the jury that if they found there was a warranty and breach as alleged, they should assess the plaintiff's damages "at whatever you may, from the evidence, determine that he has sustained, if any," without giving, as it should, a proper rule for measuring them; and refused the following, asked by defendants:

"Unless the jury shall believe from the evidence that the defendants fraudulently and deceitfully sold the plaintiff the buggy in question, or agreed that the plaintiff could return the buggy, then the plaintiff could not return the buggy, but must keep it," which should have been given.

We think the jury were left to understand, and must have understood, the law to be that in case of any breach of the warranty he could return the property and rescind the sale without the consent of defendants, or the fact to be that they did consent, and so concluded in either case that as they had the buggy, he ought to have the money he had paid for it. But the law and the fact were otherwise.

For these errors and the refusal to set aside the verdict as being against the law and the evidence, the judgment will be reversed and the cause remanded.