Woodford Distilling Company, Defendant in Error, v. Remington Typewriter Company, Plaintiff in Error.

Gen. No. 17,285.

1. SALES—*rights of purchaser where article is unsatisfactory.* Where an article of personal property is sold with an express warranty and upon the understanding that it may be returned and the purchase price refunded if found unsuitable or unsatisfactory, the buyer has an election either to retain the article and sue for a breach of the warranty, or to return the article, if found unsatisfactory, in the manner provided by the contract, and sue for the purchase price.

2. SALES—*necessity of proving value in suit for breach of warranty.* Where a typewriter is sold under a warranty with a right to return it and have the purchase price refunded if it proves unsuitable, if the buyer affirms the sale and sues for a breach of warranty, a judgment cannot be sustained if there is no evidence tending to prove the value of the machine as furnished.

3. SALES—*measure of damages for breach of warranty.* Where a buyer of a typewriter, having certain rights, elects to affirm the sale and sues for a breach of warranty, the measure of damages, apart from any special damage, is the difference between the value of the

machine as warranted and its actual value in its defective condition.

4. SALES—*when right to disaffirm is waived.* Where a typewriter is sold under an agreement that it might be returned if unsuited to use in an accounting system, the right is waived by the continued and constant use of the same without offering to return it for six months after the buyer was aware of its defects and unsuitableness, and it is immaterial that the seller knew that attempts to adjust the machine did not satisfy the stenographer, where such defects were not considered of sufficient importance to cause the buyer to assign that as a reason for not keeping the machine after its use.

Error to the Municipal Court of Chicago; the HON. EDWARD A. DICKER, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1911. Reversed and remanded. Opinion filed November 7, 1912.

TINSMAN, RANKIN & NELTNOR, for plaintiff in error.

SEITZ, BRYAN & WILBER, for defendant in error.

MR. JUSTICE FITCH delivered the opinion of the court.

The plaintiff (defendant in error) recovered a judgment for $260 from the defendant (plaintiff in error) for damages sustained by an alleged breach of contract in the sale of a typewriter. The statement of claim filed in the Municipal Court says that

"Plaintiff's claim is for money had and received by the defendant as the purchase price of a typewriter on the condition and understanding that said typewriter was to be suitable for the use and purpose of the plaintiff and  *  *  *  was to be a new typewriter free of imperfections; that said typewriter was paid for by the plaintiff before it had an opportunity to test said machine, and upon the distinct understanding that the plaintiff would not waive any of its rights by said payment; and the plaintiff asserts that said typewriter is a second-hand machine and is defective, and is not suitable for the purpose intended, and does not in any way comply with the warranty under [which] said machine was sold; by reason of which fact, the plaintiff has been damaged in the amount of $230."

It appears from the evidence that early in October, 1908, one Hunter, a sales-agent of the Remington Company, called at the plaintiff's office in Chicago, and suggested to plaintiff's bookkeeper certain changes in the methods of accounting or bookkeeping then in use by the plaintiff; that he told Rosenblatt, the plaintiff's secretary and attorney, that a Remington typewriter "would be a great advantage to the business of the Company and asked permission to put the machine in on trial;" that the desired permission was given and a No. 8 typewriting machine, with a "Wahl adder." attached, was placed in the plaintiff's office; that on October 24, 1908, Hunter called again for the plaintiff's order for the machine; Rosenblatt said that the Company "had not yet had an opportunity to find out whether the machine was entirely satisfactory, in fact the stenographer was at that time complaining about it; that the system of bookkeeping which he (Hunter) was working on for installation for the Company had not yet been completed and I (Rosenblatt) was not sure whether or not the machine would be useful for it;" that Hunter then said that "he guaranteed the machine would be satisfactory to the stenographer and useful in the system of bookkeeping," and also said, according to the testimony of Rosenblatt and the stenographer, that "if the machine did not do what he said it would do, they would take the machine back;" (this part, however, was denied by Hunter); that thereupon an order was signed for a No. 8 Remington typewriter with an adding attachment, containing these words: "for which we agree to pay the sum of $250, credit of $30 allowed for Rem. 6154466. Credit of $8.50 allowed old machine overhauled. According to verbal agreement regarding acctg. syst." Rosenblatt testified that he wrote in the words "according to verbal agreement," but that the words "regarding acctg. syst." were not in the order when he signed it. Hunter testified that he (Hunter) wrote the latter words in the order before it was signed. Following this or-

der, Hunter called several times and the stenographer complained that the "machine did not work right;" that "the ribbon didn't feed right;" that the spacing mechanism "jumped" at times; that "the type would stick," and that "the machine worked harder than the old one." Hunter sent around a repair man, or "adjuster," who attended to these complaints. The stenographer testified, that "after the adjuster had been there, it would probably work a day or so, and then be off again," and that this occurred every time it was adjusted.

Meantime, defendant's collector called with a bill for the purchase price. Rosenblatt at first declined to pay, on the grounds that the machine was not working satisfactorily, and that the accounting system had not been installed; but on the assurance of the collector (as testified to by Rosenblatt) that the payment would be "without prejudice," he paid the bill.

In January, 1909, the new bookkeeping system was in operation, and Rosenblatt testified that he then told Hunter that the machine "did not help any" and that the adding attachment was useless in the new system. Plaintiff did not, however, then or at any other time prior to July, 1909, ask defendant to take back the machine, but continued to use the machine daily, and all of each day, in the office.

In April, 1909, after several attempts on the part of defendant to adjust the machine to the satisfaction of the stenographer, defendant substituted another machine. This one "worked about the same way" and the stenographer told Hunter so, when he called after it had been used "quite a while"—a month or two later.

On July 6, 1909, plaintiff wrote to defendant, asking it "to take the whole business back and give us a satisfactory machine, and for any balance that may be left over in our favor, we are willing to take a credit memorandum," and saying further: "The machine itself is unsatisfactory, and among other things, you have furnished us with an old model of your machine;

\* \* \* the adding attachment is unsatisfactory and entirely unsuited to the nature of our business, contrary to the claims of your Mr. Hunter. \* \* \* He guaranteed the whole business to give entire satisfaction and that we could return it at any time if not satisfactory. We acquainted him with our dissatisfaction, and he has been promising to call but has not come." To this letter defendant replied, on July 12, 1909: "We gave you the second machine in even exchange for the first one delivered to you, from the fact that we wanted you to be entirely satisfied. We now are prepared to have our adjuster place this machine in absolutely perfect shape for you. \* \* \* We do not feel called upon to permit the return of a machine which we feel is doing everything we said it would do." A number of letters between the parties followed, in which plaintiff endeavored without success to induce defendant to substitute a new No. 11 visible typewriter for the second machine. On October 29, 1909, plaintiff wrote asking defendant to take away the machine and for the first time discontinued using the same. During the thirteen months prior to October 29, 1909, plaintiff used the machine daily, notwithstanding the claim that it was not working satisfactorily. Apparently no attention was paid to plaintiff's complaints after July, 1909, further than to offer, on one occasion, to put in a new $100 machine in place of the second machine, which offer was declined by the plaintiff.

From the foregoing statement of facts, it will be seen that although the plaintiff in July, 1909, claimed the right to require defendant to "take the whole business back" and give the plaintiff credit for the amount paid, and although this theory of the plaintiff's rights is reiterated in the letter sent to defendant on October 29, 1909, yet when the suit was brought the plaintiff sued only for damages for a breach of an express warranty without asserting, in its statement of claim, any claim of right to return the machine. From a reading of the record of the trial, however, it appears that

plaintiff's counsel did not try the case upon the theory of an express warranty, but tried it upon the theory that the machine had never, in fact, been accepted by the plaintiff and that therefore it had a right to recover the amount paid, notwithstanding the facts that the full purchase price was paid in October, 1908, and that the plaintiff used the machine for over a year thereafter; while the defendant's counsel evidently acted upon the assumption that the cause of action then on trial was one for damages for an alleged breach of a warranty of quality and fitness, as set forth in the statement of plaintiff's claim on file, and defended entirely upon that theory. From an examination of the oral instructions of the court, it appears that both these theories of liability and the consequences thereof were placed before the jury, and the jury was left free to decide in favor of, or against, the plaintiff on either theory or on both together.

In the briefs of counsel filed in this court, counsel for plaintiff in error present arguments based upon the same theory of the case as the one on which the case was tried by them on behalf of defendant in the court below. In reply to that theory, counsel for defendant in error now urge in this court, that there was not only an express warranty in the contract in question in this case, but was also a specific agreement authorizing the return of the machine and the repayment of the purchase price if not satisfactory to the plaintiff. The latter part of the agreement was not mentioned or referred to in any manner in the instructions given by the trial court, and so far as the record shows, the suit was neither brought nor tried upon the theory thus suggested. However, we think the judgment is wrong on any theory. Where an article of personal property is sold with an express warranty and upon the understanding that it may be returned and the purchase price refunded, if found unsuitable or unsatisfactory, the buyer has an election either to retain the article and sue for a breach of the warranty,

or to return the article, if found unsatisfactory, in the manner provided by the contract, and sue for the purchase price. Kemp v. Freeman, 42 Ill. App. 500; Cook v. Lantz, 116 Ill. App. 472. If no time is fixed for such return, the option to return must be exercised within a reasonable time, or the right of return will be deemed waived. Pennell v. McAfferty, 84 Ill. 364. In such case, if the buyer brings suit for damages for a breach of the warranty the suit is, in effect, an election to affirm the sale and retain the property, for the reason that such an action will not lie until the sale is complete and the title has passed. English v. Hanford, 75 Hun 428; Stearns v. Drake, 24 R. I. 272. On the other hand, a return of the property, or offer to return the same, followed by a suit to recover the purchase price, amounts, in effect, to a rescission, or disaffirmance of the contract of sale.

If this case be considered as brought, or based, upon the theory that the buyer affirmed the sale, reserving, however, its right to recover damages, if any, for the alleged breach of warranty, as it might lawfully do (Underwood v. Wolf, 131 Ill. 425), the judgment cannot be sustained; for, while there was evidence tending to prove the warranty and its breach, there was no evidence tending to prove the actual value of the machine as furnished. The measure of damages in such case (apart from any claim of special damage) would be the difference between the value of the machine and attachments as warranted, and their actual value in their defective condition. Skinner v. Mulligan, 56 Ill. App. 47; Mayer v. Automobile Exchange, 125 Ill. App. 648. On this view of the case, there was no basis in the evidence upon which any damages for a breach of warranty could be ascertained or assessed by the jury.

On the other hand, if the case be considered as brought upon the theory of a disaffirmance or rescission of the contract of sale, the result must be the same in our opinion; for we think it is clear that the right

of the plaintiff to return the machine (assuming it had that right by the terms of the contract) was waived by the continued and constant use of the same, without offering to return it, for at least six months after plaintiff was fully aware of all the facts regarding its defects in operation and its unsuitableness in connection with the accounting system. While there is evidence that the attempts of defendant to repair, or "adjust" the machine, did not satisfy the stenographer, and that defendant was so informed, it clearly appears from the evidence that the alleged defects were not considered by the plaintiff of sufficient importance to cause it to assign that as a reason for not wanting to keep the machine, until July 6, 1909—after it had used the machine daily for over nine months following the time when it was first placed in its office for trial and eight months after plaintiff had paid for the machine. The same considerations, in our opinion, apply to the theory that the machine was never accepted by the plaintiff.

For the reasons indicated, the judgment of the Municipal Court will be reversed and the cause remanded for a new trial.

*Reversed and remanded.*