Brian et al. v. H. A. Born Packers' Supply Co., 203 Ill. App. 262.

**Daniel P. Brian and J. Thurston Brian, copartners, trading as D. P. Brian & Son, Defendants in Error, v. H. A. Born Packers' Supply Company, Plaintiff in Error.**

**Gen. No. 21,538.**

1. SALES, § 388*—*what are remedies of buyer for breach of warranty.* Where goods are sold with warranty the buyer has, on breach of the warranty, an option of returning the goods or of retaining them and suing on the warranty.

2. SALES, § 105*—*when right to rescind sale and return goods is waived by buyer.* Where the buyer of goods received and executed a written acceptance of same as entirely satisfactory, he thereby waived the right to rescind the sale and return the goods.

3. SALES, § 427*—*when seller of goods under conditional sale contract cannot prevent obtaining of perfect title by buyer.* Where a party purchased goods upon condition that title should remain in the seller until the goods were paid for, *held* that the seller could do nothing to prevent the buyer from getting perfect title upon retaining the goods and paying the purchase price.

4. SALES, § 388*—*when action is based on breach of warranty and not on rescission of contract.* Where the statement of claim in an action of the fourth class in the Municipal Court of Chicago set up a sale of a refrigerating plant and warranty of same by the defendant to the plaintiffs, a breach of such warranty, damages by reason thereof, and payment of part of the purchase price, under which evidence of such breach and payment was presented and instructions given that the action was one for breach of warranty, *held* that such action was one based upon breach of warranty and not one based upon rescission of contract, notwithstanding

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Brian et al. v. H. A. Born Packers' Supply Co., 203 Ill. App. 262.

there was no evidence of damages for such breach and a verdict was rendered for an amount equal to the payment shown on account of the purchase price.

5. SALES, § 404*—*what is measure of damages for breach of warranty.* The measure of damages for breach of a warranty is the difference between the value of the goods as warranted and their actual value in their defective condition.

6. SALES, § 404*—*what evidence is insufficient as basis for determination of damages for breach of warranty.* Evidence of payment of the purchase price of goods sold with warranty does not constitute of itself a sufficient basis for determination by a jury of damages for a breach of the warranty.

7. SALES, § 402*—*when refusal of court to instruct jury as to measure of damages for breach of warranty is error.* In an action for damages for breach of warranty it was error for the court not to instruct the jury, when requested so to do, as to measure of damages in case they found a breach.

8. MUNICIPAL COURT OF CHICAGO, § 31*—*when case reversed.* The statement of a claim, the evidence, the instructions, and the verdict should be reasonably consistent and all tend to support the judgment, and where the evidence, the instructions and the verdict are irreconcilable, the judgment should be reversed.

Error to the Municipal Court of Chicago; the Hon. JOSEPH S. LA BUY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1915. Reversed and remanded. Opinion filed January 17, 1917. Rehearing denied January 29, 1917.

BAKER & HOLDER, for plaintiff in error.

PAUL WEMPLE, C. M. CAVENEE and WALTER F. OLDS, for defendants in error; PAUL WEMPLE, of counsel.

MR. JUSTICE TAYLOR delivered the opinion of the court.

This was a suit of the fourth class begun in the Municipal Court by Daniel P. Brian and J. Thurston Brian, copartners, doing business as D. P. Brian & Son, defendants in error (hereinafter referred to as plaintiffs), against the H. A. Born Packers' Supply

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Company, a corporation, plaintiff in error (hereinafter referred to as defendant), to recover damages in the sum of $1,000, for an alleged breach of warranty in the sale of a refrigerating plant.

The plaintiffs' statement of claim alleges, among other things, that on or about September 12, 1911, the plaintiffs and defendant entered into a written contract by which the defendant sold and the plaintiffs purchased a refrigerating machine and equipment, including a 4½-horsepower gasoline engine, for $935; that the defendant guaranteed the said machine to do its work to perfection; that "the engine furnished by the defendant had failed to operate said refrigerating plant and has been and is of no value to the plaintiffs, and there has been a total breach of the defendant's warranty as to said refrigerating plant"; that the plaintiffs have paid under said contract the sum of $810.50 to the defendant and have suffered damage by the loss of the use of one of their own refrigerators which was connected with the said refrigerating plant, to the damage of the plaintiffs in the sum of $1,000.

On January 8, 1914, the plaintiffs filed a more specific statement of claim to which was attached a copy of the written contract. The new statement of claim alleges, among other things, that the engine would not operate the plant; that the plaintiffs lost the use of their refrigerators from May to October, both inclusive, in the years 1912 and 1913; that they paid the sum of $57.65 for repairs in an attempt to make said plant operate satisfactorily; that they have paid to the defendant, under said contract, the sum of $810.50; "to the damage of the plaintiffs in the sum of $1,000." On January 16, 1914, the defendant filed an affidavit of merits in which the defendant admits the sale and delivery to the plaintiffs of the refrigerating machine pursuant to the above-mentioned written contract, but denies that it was unsatisfactory and not

in accordance with the contract, and that the plaintiffs lost the use of said refrigerator during the months of May to October in the years 1912 and 1913, and denies that the plaintiffs were damaged in the sum of $1,000 or in any amount, but alleges that the plaintiffs are entitled to a set-off in the sum of $167, being the balance of the purchase price remaining unpaid.

On January 16, 1914, the defendant filed a statement of claim setting up four certain promissory notes (part of the purchase price) signed by the plaintiffs, payable to the order of the defendant, three being for the sum of $50 each, payable respectively in seven, eight and nine months after date, the fourth being for $17.50 and payable ten months after date.

The plaintiffs filed an affidavit of merits to defendant's set-off upon the four promissory notes, claiming that the notes were given as part of the purchase price of the machine and that there had been a total want and failure of consideration for said notes in that the machine was warranted to operate satisfactorily, and that it has not so operated and has been and is of no value to the plaintiffs. The case was tried before a jury.

The evidence, substantially, was as follows: The plaintiffs, butchers in Waverly, Illinois, on September 12, 1911, bought, by written contract, from the defendant a refrigerating plant to be used in place of ice, for cooling meat in their ice boxes. H. A. Born, president of the defendant company, in the fall of 1911 visited the plaintiffs' place and looked over the situation and told them what they needed. The result was the sale above mentioned. The contract provided for building and furnishing a refrigerating and power plant, with a 4½-horsepower gasoline engine, together with certain specified equipment for $935. It contained the following, "and further guarantee said machine to do its work to perfection"; also "and pur-

chaser claims no title to said property until all payments have been made as above stated." On October 23, 1911, defendant sent two workmen, Furman and Barry, to Waverly and by November 6, 1911, the plant was installed. The first engine was found to be insufficient and the defendant sent a larger engine for which the plaintiffs paid $43 extra. The plant was then operated for one afternoon before Furman and Barry left. On November 6, 1911, the plaintiffs gave the defendant a receipt which stated the plant had "been properly installed and worked entirely satisfactorily," etc. Meanwhile, according to the suggestions of the defendant, the plaintiffs had sealed the ice boxes so as to bring about more perfect insulation. In order to get familiar with the machinery, the plaintiffs operated the plant about two hours a day for a week after November 6, 1911, although at that time the weather was cold and artificial refrigeration was unnecessary. The plant was idle until April 1, 1912, when the weather grew warm. It was then started but failed to furnish sufficient refrigeration. Beginning with May 9, 1912, the defendant sent a number of letters to the plaintiffs; and on June 29, 1912, it wrote: "Our Mr. Maher returned this morning and we have his report on the condition of the engine that you have. We have taken this matter up with the factory again and we will see that an engine is rushed to you with all possible haste. Of course we are indeed sorry that this engine fell down," etc. The third gas engine arrived July 23, 1912, and was refused by the plaintiffs. Brian testified that it was never set up and that he notified Born the engine was there subject to his disposal. Whereupon defendant wired "accept or stand suit." The plaintiffs stopped operating the machine in June, 1912, and took the coils out of one box and began using ice. The coils remained in the other ice box until March 1, 1914; the rest of the apparatus was

left in, where it was erected in the building, until the machine was torn down on March 1, 1914, when it was taken out by the plaintiffs and put in storage on the premises belonging to the plaintiffs where it was at the time of the trial. The evidence also shows that the refrigerating plant, as erected, had no market value; and that defendant was notified by plaintiffs some time in June, 1912, that they refused any more responsibility in regard to it; that it was of no use to them. There was no return, however, or offer to return the refrigerating plant. On October 24, 1911, the plaintiffs paid, as part of the purchase price, $467.50 and gave their notes for the balance; six of which latter notes, each for $50, were paid (the last one being paid May 6, 1912) and the remaining four, three being for $50 each and one of $17.50 being still unpaid and constituting the basis of the defendant's set-off. The plaintiffs had paid altogether on the purchase price $823.

After being instructed orally by the trial judge, the jury brought in a verdict against the defendant for $823.50 and costs of suit. The defendant made a motion for a new trial and also in arrest of judgment, both of which were overruled.

It is contended by the defendant: First, that as the judgment is for a breach of warranty, it cannot stand because there is no evidence in the record of damages for a breach of warranty; second, that as a judgment based on a rescission of the contract, it cannot stand, as that is inconsistent with the statement of claim, and also the jury were instructed only on the theory of a breach of warranty. The plaintiffs claim that the cause of action is rescission and also that the court did not err in refusing the defendant's proffered instructions.

An examination of the record discloses: First, a statement of claim obviously based on a breach of war-

268    APPELLATE COURTS OF ILLINOIS.

Brian et al. v. H. A. Born Packers' Supply Co., 203 Ill. App. 262.

ranty; second, evidence of a breach of warranty; third, evidence showing just what part of the purchase price had been paid; fourth, no evidence of damages for a breach of warranty; fifth, instructions only on the theory of a breach of warranty; sixth, a verdict for an amount equal to that part of the purchase price that had already been paid by the plaintiffs.

Of the foregoing six subjects, three, the statement of claim, the evidence of a breach of warranty, and the instructions, are consistent only with a trial on the theory of an alleged breach of warranty. The other three, the evidence of the purchase price that was paid, the absence of evidence of damages for a breach of warranty and the verdict of the jury, are consistent only with the trial on the theory of an alleged rescission of the contract. We cannot agree with the plaintiffs' contention that the suit in the case at bar is not a suit for a breach of warranty, but is a suit to recover that portion of the purchase price for the refrigerating plant which the plaintiffs have paid.

The plaintiffs had the option to return the refrigerating plant or to retain it and sue for a breach of warranty. *Kemp v. Freeman*, 42 Ill. App. 500. The evidence shows that the defendant retained the refrigerating plant in its possession and had it in its possession at the time of the trial. The coils in one of the ice boxes remained there from the fall of 1911, when they were put in by the defendant, until March 1, 1914; in fact, the machine as a refrigerating plant, was not torn down until March 1, 1914. Also the plaintiffs on November 6, 1911, accepted in writing, the plant as satisfactory; and had it not been for the condition in the contract, the title would have passed on November 6, 1911, to the plaintiffs. It is difficult to discover any right on the part of the plaintiffs to rescind the contract after the refrigerating plant was put in, and it was admitted by the plaintiffs that it

had "been properly installed and working entirely sat-isfactorily." As to the sale being conditional, and the title remaining in the defendant, the latter could do nothing to prevent plaintiffs from getting a perfect title upon the retention of the property and the payment of the purchase price. *Fleury & Co. v. Tufts,* 25 Ill. App. 101. According to the law, it cannot be said that in such a case an action for breach of warranty would not lie. As far as the defendant was concerned, it was an executed contract. The plaintiffs having received and had installed the complete refrigerating plant, in November, 1911, and having executed a written acceptance of the property at that time, must be considered as having waived the right to rescind and return it.

We, therefore, proceed to a consideration of the case as one for a breach of warranty. The measure of damages for a breach of warranty is the difference between the value of the refrigerating machine and attachments as warranted and the actual value in their defective condition. *Woodford Distilling Co. v. Remington Typewriter Co.,* 174 Ill. App. 244. As said above, however, the record fails to disclose any evidence of such damages arising by reason of a breach of warranty. There is no evidence in the record which the jury could consider when it undertook to ascertain and assess damages for a breach of warranty. It is true the evidence discloses what part of the purchase price had been paid, but that, of itself, constituted no sufficient basis for the determination of damages for a breach of warranty. If the law would allow us to consider the suit as one for rescission of the contract, then the evidence as to what part of the purchase price had been paid might have justified such a verdict as was rendered in this case. But it is our opinion that the litigation, as evidenced by the record, is for damages for a breach of warranty. The trial judge instructed

the jury that the plaintiffs were seeking to recover against the defendant for a breach of warranty and "that the burden of proof is upon the plaintiffs to establish by a preponderance of the evidence that the defendant permitted a breach of warranty and plaintiffs suffered damages therefrom." Such an instruction, if the suit were for a rescission of the contract, would be very misleading to the jury and vitiate the verdict which was rendered.

The defendant requested the trial judge to instruct the jury as follows:

"That the amounts paid by plaintiffs to defendant on account of the purchase price cannot be recovered back by plaintiffs as a part of its damages, if any, in this case.

"That if you find from the evidence that defendant permitted a breach of the warranty expressed in the written contract, still plaintiffs were not entitled in law to reject the machinery and recover back the purchase price paid.

"That the contract made by the plaintiffs with the defendant in this case is inseparable, and if you find from the evidence that any material portion of the machinery called for by said contract furnished by defendant to the plaintiffs failed to conform to the warranty, then the measure of the plaintiffs' damage is the difference between the value of the thing, of the entire machine and attachments as warranted, and their value there in their defective condition, if you find from the evidence that their condition was defective.

"If you find from the evidence that the refrigerating plant furnished by the defendant under the contract would not operate satisfactorily, then the measure of the plaintiffs' damage is the difference between the value of the entire machinery and attachments as warranted and their actual value in their defective condition, if you find from the evidence that their condition was defective."

We are of the opinion that the defendant's request should have been granted. A case such as this, whether involving a breach of warranty or a question of rescission, is one in which it is particularly necessary that the jury be properly instructed in the rules of law applicable to the facts. The defendant was entitled to have the jury clearly and accurately instructed as to the law of the case. The *ad damnum* of plaintiffs' statement of claim is $1,000, yet nowhere in the instructions which were given was the jury informed how to measure the damages in case they found there was a breach of warranty. They were instructed as to what would constitute a breach, but were not given any rule of law applicable to such facts by which damages might be ascertained and assessed. They were left entirely in the dark on that subject and the result was they brought in a verdict such as might have been expected (as soon as they found there was a breach of warranty), that is, the amount of the purchase price which the plaintiffs had paid.

On the theory that it was a suit for a breach of warranty, it should have been taken from the jury at the close of all the evidence, and on the theory that it was for a rescission of the contract, the jury were improperly instructed. Where, as in this case, a trial has taken place in which a jury have found there was a breach of warranty and therefore that the plaintiffs might be entitled to damages, it is with reluctance that we set aside the judgment; but the law, which the courts are created to apply, requires that the statement of claim, the evidence, the instructions and the verdict shall be at least reasonably consistent, and shall all tend to support the judgment, whereas in the instant case, the evidence, the instructions and the verdict are completely irreconcilable.

The judgment of the Municipal Court is reversed and the cause remanded.

*Reversed and remanded.*