# Gifford-Wood Company, Appellee, v. Western Fuel Company, Appellant.

## Gen. No. 23,234.

1. SALES, § 326*—*what evidence admissible to show purpose for which machine sold.* In an action for the price of a machine sold under a written contract, evidence of conversations prior to the execution of the contract tending to show the purposes for which the machine was to be used is admissible.

2. SALES, § 326*—*when evidence as to matters not contained in contract are inadmissible.* In an action for the price of a machine for handling coal, sold under a written contract, evidence of conversations before the execution of the contract wherein plaintiff's agent stated that the cost of handling the coal and the breakage would be materially reduced, is inadmissible where the contract contained no provision as to these matters.

3. SALES, § 326*—*when evidence as to how similar machines work is admissible.* In an action for the price of a machine for handling coal, sold under a written contract, evidence as to how other similar machines worked and a picture of another machine erected by plaintiff and an advertisement of defendant's business stating that it had one of the largest and best coal yards in a certain city are admissible.

4. SALES, § 326*—*when catalogue representing work performed by machines is inadmissible.* In an action for the price of a machine sold under a written contract, a catalogue of plaintiff representing what machines erected by it would do is inadmissible in evidence.

5. TRIAL, § 78*—*what is proper rebuttal evidence.* Where a witness for defendant has testified as an expert in regard to the erection and installation of a certain type of machine, and, on cross-examination, that certain machines had been erected by him and had worked satisfactorily, it may be shown in rebuttal that the machines installed by him were unsatisfactory and that one of them was altered by plaintiff's agent to make it work properly.

6. WITNESSES, § 212*—*when cross-examination is improper.* In an action for the price of a machine, where one, not a party, testifies for defendant as to the operation and cost of operating the machine, it is error to permit plaintiff to cross-examine him, over objection, on collateral matters relating to his financial condition.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

7. WITNESSES, § 214*—*when party bound by answers of witness on cross-examination.* Where a party to a suit is cross-examined on collateral matters, the party cross-examining is bound by his answers and cannot thereafter introduce evidence to impeach them.

8. SALES, § 404*—*what is measure of damages for breach of implied warranty of fitness for purpose.* Where defendant in an action for the purchase price of a machine claims damages for the breach of an implied warranty that the machine was reasonably fit for the purpose for which it was purchased, the measure of his recovery is the difference between the value of the article as warranted and its actual value in its alleged defective condition.

9. SALES, § 328*—*when date of acceptance of machine is question for jury.* In an action for the price of a machine, the date of the acceptance of the machine *held,* under the evidence, a question for the jury.

Appeal from the Municipal Court of Chicago; the Hon. HARRY OLSON, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1917. Reversed and remanded. Opinion filed January 30, 1918.

M. F. GALLAGHER and E. B. WILKINSON, for appellant; JOSEPH B. LAWLER, of counsel.

NINIAN H. WELCH and WILLIAM J. LACEY, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

The Gifford-Wood Company, a corporation, brought suit in the Municipal Court of Chicago against the Western Fuel Company of Chicago, a corporation, to recover an alleged balance due on the purchase price of a coal unloading and conveying machine. The case was tried before the court and jury and there was a verdict and judgment in favor of plaintiff for $3,003.80, being substantially the amount of its claim.

The record discloses that the plaintiff was engaged in furnishing material and constructing machines for unloading coal and defendant was in the coal business in Chicago. Both parties had been in business for

many years.   On April 23, 1913, they entered into a written contract whereby plaintiff was to furnish the material and erect "one gravity discharge elevator and conveyor," for which defendant was to pay $4,083, one fourth upon the arrival of the material and the balance 90 days after the machine was installed and accepted by defendant.   Thereafter plaintiff proceeded to erect and install the machinery.   The work was completed about September 1, 1913, and turned over to defendant.   The defendant paid $1,000 in accordance with the contract and afterwards upon demand for payment of the balance defendant refused, claiming the machine did not work properly.

In addition to its defense that the machine did not work properly and was never accepted, defendant interposed a plea of set-off, claiming damages in the sum of $9,211.49, for a breach of an implied warranty that the machine was reasonably fit for the purpose for which it was purchased.   The theory of both parties on the trial was that there was an implied warranty that the machine would be reasonably fit for the purpose for which it was intended.

Defendant produced a witness who testified over the objection of plaintiff that prior to the execution of the written contract plaintiff's representative stated to defendant that if the latter would permit plaintiff to install one of the machines, the cost of handling and the breakage or degradation of the coal would be materially reduced.   Defendant argues that this evidence was properly admitted to show the purpose for which the machine was intended, and in support of its position the case of *Lidgerwood Mfg. Co. v. S. R. H. Robinson & Son Contracting Co.*, 183 Ill. App. 431, and others are cited.   In that case it was held, in an action to recover for certain excavating machines sold under a written contract, that conversations between the parties before the contract was entered into were competent to show the purpose for which the machines were

intended—that the defendant wanted the machines to excavate a diversion canal. In the case at bar, if the prior conversations tended to show that the machine was to be used in handling coal they would be competent, but they were not competent to show that the purpose of the machine was to reduce the cost of handling and breakage of the coal. If the defendant purchased the machine with the understanding that it was to have a certain capacity for handling coal and that there would be no more than a certain amount of breakage, these matters should have been included in the written contract, but as this was not done, under an elementary rule of evidence, the conversations were inadmissible.

Defendant also complains that it was error to admit evidence of the manner in which other similar coal-conveying machines worked, and a picture of another machine erected by plaintiff. Without discussing the evidence, we think it was competent to prove how other coal machines operated and to offer the picture, provided the other machines were substantially similar to the one in question. We also think that the postal card distributed as an advertisement of defendant's business, wherein it was stated that the defendant had one ·of the largest and best coal yards in Chicago, was properly admitted. Of course what weight would attach to this piece of evidence was for the jury. The objection that the court should have admitted the catalogue of plaintiff, wherein it was represented what coal-conveying machines erected by plaintiff would do, is untenable, since the contract between the parties was in writing.

Complaint is also made by defendant of the admission over objection of evidence regarding coal-conveying machines erected and installed by the witness James. This witness was called as an expert by defendant and testified that he had many years' experience in erecting coal-conveying machines and at the re-

quest of the defendant he had examined the machine in question. He then gave his opinion as to what changes were necessary to render the machine reasonably fit for the purpose for which it was intended. He also gave his opinion of the cost of such changes, and the usual amount of degradation or breakage of coal when handled by machines. In response to questions on cross-examination he stated he had put in a coal-conveying machine at Delavan, Wisconsin, and other machines at other places, and that the machines installed by him worked to the satisfaction of the parties for whom they were installed. In rebuttal two witnesses on behalf of the plaintiff were permitted to testify over objection that the machines installed by the witness James were unsatisfactory, and that one of them was altered by a representative of the plaintiff to make it work properly. It is argued that this testimony was highly prejudicial; that it was incompetent to impeach the ability of the witness in this manner, and that the question as to whether the machines installed by him worked satisfactorily was not at all involved. It is a general rule that where an expert testifies it is inadmissible to prove by other witnesses particular instances of error made by the witness, for the reason that such evidence tends to confuse the issues; but it is also held that such testimony may often be the best means of establishing whether the witness' opinion should be given weight. A great deal of discretion should therefore be vested in the trial court in the admission of such testimony. 2 Wigmore on Evidence, sec. 991; *Hoag v. Wright,* 174 N. Y. 36; *People v. Pekarz,* 185 N. Y. 470. Professor Wigmore, in the section cited, says: ''Proof of such particular instances of error by *other witnesses* is generally regarded as inadmissible, and for reasons analogous to those of the character-rule, namely, confusion of issues, by the introduction of numerous subordinate controversies involving comparatively trivial matters,

and unfair surprise, by leaving the impeached witness unable to surmise the tenor or the time of supposed conduct which might be attributed to him by false testimony. Nevertheless, such instances may often be most effective evidentially, and the possible disadvantages may not always be present. The trial court should therefore have the discretion to permit this mode of proof when it seems useful." In the *Hoag* case, *supra,* owing to the dangerous nature of expert evidence and the necessity of testing it in the most thorough manner in order to prevent any injustice, it was held that where a witness (a professed expert) makes a mistake and does not acknowledge his error, it may be shown by other testimony to determine whether the witness was really an expert; that while the trial court might properly restrict such evidence, it should not exclude it altogether. The court there said (p. 44) : "As the hostility of witnesses to a party may be shown as an independent fact, although it protracts the trial by introducing a new issue, so, as we think, the incompetency of a professed expert may be shown in the same way and for the same reason; that is, because it demonstrates that testimony, otherwise persuasive, cannot be relied upon." Further, the court said (46) : "The competency of a witness is a fact necessary to be known in order to learn the value of his opinion. While it is not an issue raised by the pleadings, it becomes a subordinate issue by the tender of the witness as an expert. As the opinion may determine the main issue, the question whether the opinion is relevant, that is, whether it is the opinion of one legally qualified to give it, is necessarily an incidental issue, as otherwise the main issue might be decided upon an irrelevant fact. It is incidental to the main issue, because it attacks the foundation of the evidence, and it may be the only evidence, received to establish the main issue. It is not enough to permit the opinion of an incompetent witness to be met by the

opinion of a witness who is competent, for the jury may not be able, even when instructed by the cross-examination, to tell the good from the bad, unless they are guided by further evidence.   *   *   *   'The value of an opinion does not depend upon the skill and knowledge professed by the witness, but upon the skill and knowledge which he actually possesses, and of the accuracy of such knowledge the jury must judge.'   (Rogers, Expert Testimony, 59.)''   Under these authorities, we think the testimony offered by plaintiff in rebuttal was properly admitted.

Complaint is also made that the court improperly instructed the jury that the defendant could not retain and use the machine unless it did so at the request of plaintiff, and that there was also error in the charge that there could be no implied warranty where there was an express warranty on the same subject-matter. Upon objection by defendant these points were modified as requested, and there is therefore no merit in this contention.   We have examined the other objections made to the charge, but we think none of them have any substantial merit, and that the charge as a whole fairly presented the issues, considering the evidence that was admitted.

The defendant contends that there is reversible error in the cross-examination of Stephen B. Jones, in reference to his financial condition, and further in permitting plaintiff in rebuttal to introduce other evidence of his financial condition.   The record discloses that Stephen B. Jones at the time of the execution of the contract was a stockholder in the defendant company, and its president.   He was called as a witness for defendant, and in his direct examination testified concerning the manner in which the machine operated, the cost of handling the coal and the amount of degradation.   On cross-examination, over objection, plaintiff asked the witness if it was not a fact that the reason he did not pay for the machine was because he was

bankrupt in 1914; if he did not convey all his stock owned in the company either to his wife or his son; if he did not convey his real estate to his wife; if it was not a fact that the witness was in the Des Plaines Street Court of Chicago before Judge Caverly in relation to some of his creditors; if it was not a fact that during 1914 or 1915, the witness conveyed all of his stock in the defendant company and conveyed all of his real estate and left Chicago; if he did not meet a Mr. Henschen in Columbus, Ohio, and return to Chicago with him; if it was not a fact that the witness as president of the defendant company and owner of the stock borrowed money of different banks in Chicago; if it was not a fact that an involuntary petition in bankruptcy was filed against him in January, 1915; if it was not a fact that the petition was dismissed, and the witness' wife and son afterwards conveyed back to some trustee the witness' property, including some of the stock of the defendant company; if it was not a fact that the State Bank of Chicago brought suit against him on certain notes; if it was not a fact that he was "kiting checks" of the Western Fuel Company during 1914? The witness was compelled to answer all these questions. His son Homer Jones was also cross-examined with reference to the same matters, and, over objections, was compelled to answer the questions. Plaintiff called witnesses in rebuttal who testified, over objection, to matters relative to the financial standing and the transfer of property by Stephen B. Jones, and as to the amount he owed various parties, including banks in Chicago, which testimony tended to impeach the testimony of Stephen B. Jones given on cross-examination. Plaintiff argues that this cross-examination and the testimony in rebuttal were proper for the reason that defendant was what is usually known as a "one man corporation"; that the evidence shows that said Jones was the owner of practically all of the stock of the corporation and

the dominating factor in its management. It does not appear how much stock was owned by Stephen B. Jones, nor is there any evidence that tends in any manner to show that defendant was unable to pay its debts. This evidence was incompetent for any purpose and was prejudicial to the defendant. The witness was not the defendant, and it was improper to cross-examine him, over objection, on collateral matters relating to his financial condition. Furthermore, it is a rule of evidence that where a party to a suit is cross-examined on collateral matters, the party cross-examining is bound by the answers of the witness and cannot afterwards introduce evidence to impeach such answers. 1 Greenleaf on Evidence, sec. 449; *Moore v. People,* 108 Ill. 484.

Plaintiff also contends that where a suit is brought to recover the purchase price of an article, and it is claimed there is a breach of an implied warranty, the measure of damages is the difference between the value of the machine as warranted and its actual value in its alleged defective condition. On the other hand, the defendant contends that it is entitled to such damages as are the natural consequences of the defects in the machine in addition to the cost of repairing it. In support of this, defendant cites the case of *Accumulator Co. v. Dubuque St. Ry. Co.,* 64 Fed. 70. That case sustains defendant's position. This court, however, has held that the measure of damages for a breach of warranty in a case like the one at bar is the difference between the value of the article as warranted and its actual value in its alleged defective condition. *Dravo Doyle Co. v. Sulzberger & Sons Co.,* 197 Ill. App. 547; *Mayer v. Automobile Exchange,* 125 Ill. App. 648; *Skinner v. Mulligan,* 56 Ill. App. 47. We think the rule heretofore announced by this court is the correct rule to be applied in this case.

The defendant further argues that the court erred in instructing the jury that the machine was accepted

by the defendant as a matter of law on April 8, 1914. There was a dispute between the parties as to whether the machine handled the coal properly as contemplated by the contract, and on April 8, 1914, defendant wrote a letter to plaintiff stating that plaintiff was familiar with the complaints made and requested that the defects be cured, "or we shall be obliged to have others make such changes as shall be necessary, the cost of which will be charged to your account." While we do not consider the ruling of the court reversible error, yet upon a retrial if the evidence on this point is the same, we think the question of the acceptance or nonacceptance of the machine should be submitted to the jury.

The trial of this case consumed several days, the record is voluminous, and, after a careful consideration of the entire record, we are not at all satisfied that on another trial the result will be different; yet, we are unable to say that the cross-examination of Stephen B. Jones and his son, and the admission of the testimony in rebuttal tending to impeach these witnesses, did not improperly influence the jury in arriving at their verdict. We are therefore constrained to hold that the judgment of the Municipal Court of Chicago should be reversed and the cause remanded.

*Reversed and remanded.*