Leon M. Pisculli,

*vs.*

Bellanca Aircraft Corporation, a corporation duly organized and existing under and by virtue of the laws of the State of Delaware, Bellanca Aircraft Corporation of America, a corporation duly organized and existing under and by virtue of the laws of the State of New York, North Oceanic Airway Corporation; a corporation duly organized and existing under and by virtue of the laws of the State of New York, Cesare Sabelli and Delaware Flying Service, Inc., a corporation duly organized and existing under and by virtue of the laws of the State of Delaware.

*New Castle, April 29, 1930.*

152

*James* R. *Morford*, of the firm of Marvel, Morford & Ward and *William T. Lynam, Jr.*, for complainant.

*Robert H. Richards* and *Aaron Finger*, for defendants Bellanca Aircraft Corporation, a corporation of the State of Delaware, and Bellanca Aircraft Corporation of America, a corporation of the State of New York.

THE CHANCELLOR. A phase of this case which was neither touched upon in the original argument, nor noticed in the opinion heretofore filed, was suggested to the court as sufficiently important to merit discussion before a final decree in the cause was entered. The point involved in the suggestion seemed to be of such importance as to warrant its consideration, and reargument of the case in order that the point might be disposed of was accordingly granted.

The question involved in this phase of the case turns around a certain tender of three thousand dollars which Sabelli made to Joseph Bellanca, the defendant's president, at New Castle in January, 1929, two or three days before the sale under the conditional sales contract was advertised to take place.

The facts are as follows: On January 9, 1929, the Bellanca Company gave notice to Sabelli that the plane had been retaken under the conditional sale agreement because of Sabelli's default thereunder in eight certain particulars. The language of the notice of retaking appears in the opinion heretofore filed. For convenience, the eight specifications of default on Sabelli's part are herein restated as follows:

"1—Failure to pay Nineteen Hundred Dollars ($1900.00) which became due on the 21st day of July, 1928;

"2—Failure to keep the said property in repair;

"3—Failure to compete for an endurance record for sustained flight with the aforesaid plane;

"4—Assignment of the rights and title in said plane to one Leon M. Pisculli, without knowledge of the seller or its written consent;

"5—Permitting said plane to be attached by Leon M. Pisculli on or about the 17th day of September, 1928;

"6—Permitting plane to be encumbered with a lien for work done upon the said plane and on account of storage and repair thereof;

"7—Giving of a chattel mortgage on plane to Leon M. Pisculli; and

"8—By becoming financially involved."

The notice set forth that on January 21, 1929, the plane would be sold pursuant to' the provisions of the *Uniform Conditional Sales Act of the State of New York* at a designated hour and place.

Two or three days before the sale date Sabelli, the conditional vendee, appeared in the office of the Bellanca Company at New Castle, Delaware, and protested to Bellanca, the president of the conditional vendor, against the sale. He tendered three thousand dollars to Mr. Bellanca to cover, as he thought, all sums due on the plane and thereby undertook to redeem the plane. Bellanca informed him that the sum was not enough. Sabelli then requested to be informed as to the amount claimed to be due, expressing a desire and intent to pay the full balance. Bellanca declined to state how much was due, and said that Sabelli would have to see the company's attorney to whom the whole matter had been referred, that he, Bellanca, could now do nothing about the matter. At the time of the tender Sabelli owed the unpaid balance of $1900.00 on the purchase price of the plane. The $3,000.00 tendered by him covered this sum and in addition what Sabelli considered fully ample to cover all other charges. As before stated, Bellanca not only refused to accept the $3,000.00 but declined to inform Sabelli just what sum was requisite to redeem the plane. It now turns out that barring all items of damages for Sabelli's alleged failure to try for an endurance flight (which for the reasons hereinafter stated I consider as amounting to nothing in calculating the amount requisite for the plane's redemption), according to the Bellanca Company's outside figure the sum of $3,054.60 was all that was necessary to be paid by Sabelli to discharge all the claims of the Bellanca Company in full, whatever the nature of their origin.

The *New York Conditional Sales Act* by which the rights of Sabelli and the Bellanca Company were governed, provides in *Section 78* (which corresponds to *Section 18* of the *Uniform Conditional Sales Act*) as follows:

"§ 78. REDEMPTION. If the seller does not give the notice of intention

to retake described in Section seventy-seven, he shall retain the goods for ten days after the retaking within the state in which they were located when retaken, during which period the buyer, upon payment or tender of the amount due under the contract at the time of retaking and interest, or upon performance or tender of performance of such other condition as may be named in the contract as precedent to the passage of the property in the goods, or upon performance or tender of performance of any other promise for the breach of which the goods were retaken, and upon payment of the expenses of retaking, keeping and storage, may redeem the goods and become entitled to take possession of them and to continue in the performance of the contract as if no default had occurred. Upon written demand delivered personally or by registered mail by the buyer, the seller shall furnish to the buyer a written statement of the sum due under the contract and the expense of retaking, keeping and storage. For failure to furnish ·such statement within a reasonable time after demand, the seller shall forfeit to the buyer ten dollars and also be liable to him for all damages suffered because of such failure. If the goods are perishable so that retention for ten days as herein prescribed would result in their destruction or substantial injury, the provisions of this section shall not apply, and the seller may resell the goods immediately upon their retaking. The provision of this section requiring the retention of the goods within the state during the period allowed for redemption shall not apply to the goods described in Section sixty-eight."

This section is applicable to this case and by it Sabelli was entitled to redeem the plane from the retaking and to take possession of it upon paying or tendering to the Bellanca Company the amount due under the contract and interest and upon payment of the expenses of retaking, keeping and storage. At the time of the retaking the plane was at New Castle, where the Bellanca Company had it for repairs.

The Bellanca· Company's claim of $3,054.60 was for balance of purchase price ($1,900.00), interest thereon, repairs, expenses of retaking, keeping and storage. At the time of the tender the $1,900.00 item together with interest had to be paid under the New York statute before the plane could be redeemed. Assuming, but not deciding, that repair bills had also to be paid, then according to the Bellanca Company's own statement, such charges together with the $1,900.00 and interest due totalled $2,620.97. The only other cash obligations which the New York statute exacts as a condition precedent for redemption is the payment of a sum sufficient to re-imburse the retaker for the "expenses of retaking, keeping ·and storage." The charge for

retaking certainly could have been little, if anything, because the plane was in the Bellanca Company's possession already, having been turned over to it for repairs. The items of "keeping and storage" could not have been large, because if the charge for keeping and storage is to be confined to the period intervening between the retaking and the redemption as I think it must, such period was for only ten days. The plane as I recall was kept and stored at the hangar of Delaware Flying Service, Inc., adjoining the Bellanca plant. No extraordinary expense therefore could have been incurred by reason of the location of the storage place.

In view of the foregoing we have then this situation—Sabelli made tender of a sum sufficient to cover the balance due on the purchase price with interest and charges for repairs (total of $2,620.97) and an additional $379.03 to cover the expenses of retaking, keeping and storage. Under the evidence I am forced to conclude that this latter sum was amply sufficient to more than cover all reasonable charges for retaking, keeping and storage.

It would seem that where all the facts touching the item of expense due to retaking, keeping and storage were in the possession of the vendor and unknown to the vendee, and the latter was present offering to pay $3,000.00, or whatever additional sum was necessary to square his account, the vendor ought in good conscience to have disclosed to the vendee the exact amount claimed. It is true Sabelli could have made a written demand upon the Bellanca Company for a statement in writing of the sum due under the contract, and for the expense of retaking, keeping and storing. The act in the quoted section so provides. It does not appear from the act, however, that he was bound to do this or forego all his rights. That provision seems to me designed to serve the purpose of arming the vendee with a weapon to compel the vendor under threat of a penalty to do that which he ought to do. It would not seem to be intended for the benefit of the vendor in any way, and I can see no reason why the vendee might not, if he chooses, endeavor to make the payment necessary to save his rights without being compelled to force the vendee into a writing. The statute gives the vendee the right to redeem. That is a general right founded in the inherent nature of the con-

tract between the parties. Because the statute supplied the vendee with an aid to assist in the securing of the right, it would be illogical to say that the aid must in all cases be accepted or the right which it is designed to assist must be forfeited. Such appeals to me as the reason of the matter. In the absence of a citation of New York authority construing the New York statute in another way, I conclude that it was not necessary for Sabelli to make written demand for a statement in writing from the Bellanca Company showing the amount due.

As to the money payments due under the contract, then, the conclusion is that Sabelli made tender of an amount amply sufficient to cover them. Furthermore, it appears to me that the equity of the situation would require that if Sabelli's tender of cash did in point of fact fall short by $54.60 as contended by the Bellanca Company, the latter should before the sale took place, have pointed out the deficiency so that Sabelli could have paid it as he was ready and willing to do. *Cushman v. Jewell*, 14 *N. Y. Sup.* (*7 Hun*) 525.

There is another question with respect to money payments under the contract which calls for attention. The conditional sales agreement was made subject to all the terms and conditions of the original contract dated August 12, 1927, that called for the construction and purchase of the plane. That contract and its supplement contained a clause that obligated Sabelli to compete for an endurance flight and to pay to the Bellanca Company a percentage of the gross receipts obtained by him as a reward, etc., in connection with such flight. He made no endurance flight. The Bellanca Company contends that failure to try for endurance was a breach of contract, that this was one of the defaults by reason of which it retook the plane, and that before Sabelli could redeem the plane from the retaking he was bound to compensate the Bellanca Company in money for this breach. No statement appears anywhere in the record concerning the money measure of the breach referred to. As I view the evidence, no money claim is predicable on the failure to make the endurance flight. As to the percentage payable to the Bellanca Company, certainly that phase of the contract was not breached, for the simple reason that Sabelli never received any moneys out

of which the percentage was payable. If therefore anything is due under the clause in question, it is by reason of the fact that no attempt at an endurance flight was made. But this can give rise to no claim for damages because the plane was incapable of making an endurance flight. There can be no doubt upon that point. It is not controverted. If an endurance flight was impossible, how can Sabelli's failure to undertake it have damaged the Bellanca Company?

I repeat then the statement just made, that so far as money payments under the contract are concerned, Sabelli made tender of an amount amply sufficient to cover them.

Having said this, the defaults numbered one and three by reason of which the plane was retaken and sold were satisfied by Sabelli's tender of $3,000.00 and the situation was as though the defaults specified had not occurred.

There were other defaults specified, numbered 2, 4, 5, 6, 7 and 8, *supra*. These had to do with keeping the plane in repair, assigning the plane to the complainant, permitting the plane to become attached, permitting it to be encumbered with a lien for work and storage, giving a chattel mortgage and the vendee's becoming financially involved.

There is no evidence that Sabelli ever permitted the plane to be encumbered with a lien for repairs beyond those done by the Bellanca Company. The tender he made covered those repairs. As to a lien for storage (if there was one), Sabelli so far as the evidence shows, never incurred it. Such a lien if it arose by reason of the Bellanca Company's act in storing it, was at most a common law one and it became discharged when the Bellanca Company retook the plane. All that the charge amounted to thereafter was a mere chose in action against the party incurring the charge. The nature of the storage charge, who incurred it and what its amount was, nowhere appears.

In the sense that title is reserved by a conditional sales contract solely as security for the performance by the vendee of his obligations, a conditional sales agreement is the equivalent of a chattel mortgage, and accordingly a right of redemption should be allowed to exist in the buyer. *Section* 18 of the *Uniform Act* and its counterpart in the New York law (*Section* 78) are in

harmony with this conception and are designed to express it. It is proper then to say that the object of all the provisions of the contract upon which the above defaults specified as 2, 4, 5, 6, 7 and 8 are based, was to protect the vendor's unpaid balance by keeping the security, the plane, in good condition free from liens and rival claims. If the unpaid balance was paid at any time, then manifestly the vendor could thereafter have no legitimate concern in what happened to the plane. It follows, then, that when Sabelli made tender of all sums properly due to the Bellanca Company, the latter's complaint about the defaults specified could be of no moment whatever. All rights which it had to protect its unpaid balance against the injury which those defaults threatened, would obviously be satisfied by payment of the balance or its equivalent of tender. If the Bellanca Company rejected the payment, by what show of reason can it cling to the defaults as instruments for securing it?

The conditional sales agreement provides that if Sabelli complies with all the terms of the agreement and makes all payments as provided, the Bellanca Company would give a bill of sale to him and convey the title.

If the Bellanca Company had accepted the $3,000.00 in satisfaction of all Sabelli's obligations, there can be no question but that title to the plane would have instantly passed to Sabelli without the further formality of a bill of sale. *Phillips v. Hollenberg Music Co.*, 82 *Ark.* 9, 99 *S. W.* 1105; *Brian v. H. A. Born Packers' Supply Co.*, 203 *Ill. App.* 262; *Swallow v. Emery*, 111 *Mass.* 355; *American Soda Fountain Co. v. Vaughn*, 69 *N. J. Law*, 582, 55 *A.* 54; *Strong v. Taylor*, 2 *Hill* (*N. Y.*) 326; *Cushman v. Jewell*, 14 *N. Y. Sup.* (7 *Hun*) 525; *Tufts v. Griffin*, 107 *N. C.* 47, 12 *S. E.* 68, 10 *L. R. A.* 526, 22 *Am. St. Rep.* 863; *Osborn v. South Shore Lumber Co..* 91 *Wis.* 526, 65 *N. W.* 184.

The sum of $3,000.00 being ample to satisfy all of Sabelli's obligations under the contract, as already stated, the tender of that amount was as equally effective as its actual payment, to pass the property to him. *Ingersoll-Sergeant Drill Co. v. Worthington*, 110 *Ala.* 322, 20 *So.* 61; *Peasley v. Noble*, 17 *Idaho*, 686, 107 *P.* 402, 27 *L. R. A.* (*N. S.*) 216, 134 *Am. St. Rep.* 270; *Day*

*v. Bassett,* 102 *Mass.* 445; *Kiefer-Haessler Hardware Co. v. Paulus,* 149 *Wis.* 453, 135 *N. W.* 832; *Cushman v. Jewell, supra.*

On January 19, 1929, therefore, when Sabelli made his tender, title to the plane passed to him. The possession was wrongfully withheld from him thereafter. It was a possession which he was entitled to have and which should have been granted him. Regarding that as done which should have been done, the matter stands in this light, that on January 19, 1929, Sabelli had title to the plane and in essence, though not in strict point of fact, possession thereof. The possession which the Bellanca Company retained should be regarded as possession for Sabelli's account. That being so, the situation was complete for the attaching of the complainant's lien. As against Sabelli, the complainant had the clear right to look to the plane for satisfaction of his demand. When the Bellanca Company kept the plane and disposed of it, it wrongfully took property which the then owner had agreed the complainant might look to for security and payment. It had full knowledge at that time of the complainant's agreement with Sabelli as is evident not only from the fact that it sent the complainant notice of the retaking and proposed sale, but from the contents of the notice itself.

The conduct of the Bellanca Company appears to have been animated by a purpose to disregard entirely the complainant's rights and itself to keep the plane after having received full payment or its lawful equivalent. When it declined to receive for itself satisfaction in full, it would be contrary to equity to permit it to benefit itself by balking the complainant of his rights.

The lien which the complainant had was good as against Sabelli who had the sole proprietary interest in the plane after January 19, 1929, and accordingly the plane in the hands of the Bellanca Company, which had full notice prior to that date, was subject to the complainant's claim.

The Bellanca Company not only brought about the sale in disregard of Sabelli's and the complainant's rights, but itself became the purchaser at the sale with full notice. If the plane were now available, the decree would order it sold in satisfaction of the complainant's demand. Whether on such sale the complainant's lien would be subordinate to the Bellanca Company's

unpaid balance, it is not necessary to consider. This is for the reason that when the plane was released from the restraining order, as a condition of such release the Bellanca Company gave a bond in the penal sum of seventeen thousand dollars, the condition of which is that the Bellanca Company shall pay to the complainant "all sums which the Chancellor shall hereafter determine * * * would have been a lien upon * * * the 'Roma' but for this bond." The decree will therefore fix the amount of the complainant's lien which the obligors in the bond have undertaken to pay.

Decree accordingly.