(February 10, 1910.)

## ED PEASLEY, Respondent, v. ROBERT NOBLE, Appellant.

[107 Pac. 402.]

Conditional Sale Contract—Forfeiture of Contract—Power to Declare Forfeiture—Agency of Conditional Sale Vendee.

1. A conditional sale and delivery of the property to the vendee, reserving title in the vendor, and conferring power and authority on the vendee to sell such property, has the effect of passing title to one who makes a *bona fide* purchase from such conditional sale vendee, and upon such sale the original vendor's title is divested and at once transferred to the purchaser.

2. Where the vendee of property under conditional sale is vested with the power to sell such property and deliver the proceeds to the vendor, a purchaser in good faith is under no obligation to follow the purchase price and see that it is delivered by the agent to the original vendor.

3. Where a conditional sale contract, accompanied with a delivery of the possession of the property to the vendee, provides that a failure to make payment at the times and in the manner specified in the agreement shall work a forfeiture of all rights under the contract and entitle the seller to immediately take possession of the property sold, the mere fact of a failure to make any payment at

the time or in the manner specified does not *per se* work a forfeiture of the contract, but in order to effect the forfeiture, it is necessary for the vendor to demand or reclaim the property. A breach or mere failure to pay does not terminate the contract, but has the effect of conferring upon the vendor the option to declare a forfeiture and repossess himself of the property he has contracted to sell.

4. Where N. delivered possession of a band of sheep to N. & Co. under a conditional sale agreement providing that title should remain in N., and authorizing N. & Co. to make sales from time to time of any part or all of such property, and providing further that upon failure to make any payment at the time and in the manner specified in the agreement, N. & Co. should forfeit all rights under the contract, and that N. might thereupon take possession of the property, *held*, that notwithstanding a failure of N. & Co. to make payments as stipulated, if N. fails likewise to demand or take possession of the property, the contract is still in force and the agency to sell still exists, and that N. & Co. can transfer a good title to a *bona fide* purchaser until such time as N. either demands or takes possession of the property.

(Syllabus by the court.)

APPEAL from the District Court of the Seventh Judicial District, for the County of Canyon. Hon. Ed L. Bryan, Judge.

Action in claim and delivery. Judgment for plaintiff. Defendant appealed. *Affirmed.*

Hawley, Puckett & Hawley, and Morrison & Pence, for Appellant.

The terms of the written contract were violated. The payments were not made when due. The right to purchase the sheep and the rights under the contract running to Newland & Co. were thereby forfeited, and they held the sheep as simple bailees, with the sole obligation (and without any power to sell or right to buy) to return them to appellant. The contract of sale was at an end; the condition which alone kept it alive was violated and there was no sale. (Citing authorities given in opinion.)

The authorities cited by respondent to support the authority to resell under the conditional contract of sale can be

·differentiated from the case at bar in this: Such cases in-
volve the resale of goods, wares and merchandise where the.
·clear intent and purpose, as well as the nature of the goods,
indicated a placing of the goods for the express purpose of
:selling them. In the case at bar this is not the fact. New-
land & Co. took the contract for the purpose of going into
the sheep business and securing, so soon as they might pay
·out,, flocks,· making them proprietors and flock-masters. The
question of resale is incidental and subsidiary only, and was
for the purpose of giving such flexibility to the relationship
as would permit them to continue the business as sheep men
and flock-masters. Certainly there was no such intention as
to permit an absolute and complete sale of all of the sheep.
(1 Mecham on Sales, sec. 601; *Pralt v. Burhans,* 84 Mich. 487,
·22 Am. St. 703, 47 N. W. 1064; *Lewis v. McCabe,* 49 Conn.
140, 44 Am. Rep. 217.)

On the question of conditional sale and construction of con-
tract eliminating the question of agency, we cite: *Harkness
v. Russell,* 188 U. S. 663, 7 Sup. Ct. 51, 30 L. ed. 285; *Warner
v. Roth,* 2 Wyo. 63; *Studebaker Bros. v. Mau,* 14 Wyo. 68, 82
Pac. 2; *Freed etc. Co. v. Sorensen,* 28 Utah, 419, 107 Am. St.
731, 79 Pac. 564; *Page v. Urick,* 31 Wash. 601, 96 Am. St.
·924, 72 Pac. 454; *Kidder v. Machinery Co.,* 38 Wash. 179, 80
Pac. 301; *Rodgers v. Bachman,* 109 Cal. 552, 42 Pac. 448;
*Van Allen v. Francis,* 123 Cal. 474, 56 Pac. 339; *Ward Land
& Stock Co. v. Mapes,* 147 Cal. 747, 82 Pac. 426; *Loomis v.
Bragg,* 50 Conn. 228, 47 Am. Rep. 638; *Sumner v. Wood,*
67 Ala. 139, 42 Am. Rep. 104; *Bailey v. Harris,* 8 Iowa, 331,
74 Am. Dec. 312; *Cole v. Hines,* 81 Md. 476, 32 Atl. 196, 32
L. R. A. 455, and note; *Mark Means Transfer Co. v. Mc-
Kenzie,* 9 Ida. 165, 73 Pac. 135; *Barton v. Groseclose,* 11
Ida. 227, 81 Pac. 623; *Kester v. Schuldt,* 11 Ida. 663, 85 Pac.
·974.

Rice, Thompson & Buckner, and W. E. Borah, for Respond-
·ent.

The contract between Noble and Newland & Co. expressly
provides that Newland & Co. should have power to sell the

property, or any part thereof, and account to Noble for the proceeds. In making such a sale, by the exercise of the power of sale above referred to, Newland & Co. became the agents of Noble, and Peasley, being the purchaser, was under no obligation to see that the proper accounting was made to Noble. Title passed to the plaintiff under the power of sale, and the question of account was one wholly between Newland & Company and Noble. (*A. J. Knollin & Co. v. Jones,* 7 Ida. 474, 63 Pac. 638; *Ufford v. Winchester,* 69 Vt. 542, 38 Atl. 239; *F. J. Dewes Brewery Co. v. Merritt,* 82 Mich. 198, 46 N. W. 379, 9 L. R. A. 270; *New Haven Wire Co. Cases,* 57 Conn. 384, 18 Atl. 266, 5 L. R. A. 300; *Winchester Mfg. Co. v. Carman,* 109 Ind. 35, 58 Am. Rep. 382, 9 N. E. 707; *Fitzgerald v. Fuller,* 19 Hun, 180; *Bent v. Jerkins,* 112 Ala. 485, 20 So. 655; *Winchester Mfg. Co. v. Carman,* 109 Ind. 31, 58 Am. Rep. 382, 9 N. E. 707; *Wilder Co. v. Wilson,* 84 Tenn. (16 Lea) 548; *Columbus B. Co. v. Turley,* 73 Miss. 529, 55 Am. St. 550, 19 So. 233, 32 L. R. A. 260; *Armington v. Houston,* 38 Vt. 448, 91 Am. Dec. 366; *Rogers v. Whitehouse,* 71 Me. 222; *Spooner v. Cummings,* 151 Mass. 313, 23 N. E. 839; *Wright v. Solomon,* 19 Cal. 77, 79 Am. Dec. 196.)

A careful consideration of its language shows that the contract did not terminate of itself in case of default. The law abhors a forfeiture, and will not construe a contract in favor of a forfeiture unless such construction is plainly indicated by the context, but in this case such construction is not only not clearly indicated, but the contract itself clearly shows that such was not the intent of the parties, but their intent was to clothe the party of the first part, Mr. Noble, with the power to declare a forfeiture if he saw fit. (*Aultman v. Mallory,* 5 Neb. 178, 25 Am. Rep. 478; *Cole v. Hines,* 81 Md. 476, 32 Atl. 196, 32 L. R. A. 455; *Hutchings v. Munger,* 41 N. Y. 158; *Holt Mfg. Co. v. Ewing,* 109 Cal. 353, 42 Pac. 435; *Park etc. Co. v. White River Lumber Co.,* 101 Cal. 37, 35 Pac. 442; *Bailey v. Hervey,* 135 Mass. 174.)

When Noble failed to take the sheep as tendered to him upon the first default in payment, and stated to the purchasers that he did not want the sheep and that they should

keep them and pay as they could, it was a complete waiver of title. His position was inconsistent with the right to take possession of the sheep. (*Norwegian etc. Co. v. Munger,* 52 Kan. 371, 35 Pac. 11; *De Yoe v. Jamison,* 33 Mich. 95; *Green v. Bennett,* 23 Mich. 470; *Kimball v. Farnham,* 61 N. H. 348; *Oester v. Sitlington,* 115 Mo. 256, 21 S. W. 820; *Hill v. Townsend,* 69 Ala. 286; *Henkins v. Miller,* 45 Ill. App. 37; *Winnesheik Ins. Co. v. Schueller,* 60 Ill. 465; *Gorham v. Holden.* 79 Me. 319, 9 Atl. 894.)

AILSHIE, J.—This action is in claim and delivery. The complaint is in the usual form for such actions. The answer denied the ownership of the plaintiff and his right to the possession of the property, and also set up a separate and independent defense. The case was tried on the issues thus made, and judgment was entered in favor of the plaintiff. Defendant moved for a new trial, and has appealed from the judgment and order denying his motion.

The transaction out of which this action has arisen is substantially as follows: On January 1, 1901, George H. Stewart, John M. Haines and Lewis E. Newland, whom we shall hereafter designate as "Newland & Co.," entered into a contract with the appellant, Robert Noble, whereby Newland & Co. agreed to purchase and Noble agreed to sell 10,000, head of sheep. The material and essential part of the contract, and that upon which the decision of this case must eventually turn, is as follows:

"That to the end of perfecting said sale, the said sheep have been delivered into the possession of the said parties of the second part, but that title is to remain absolutely in the party of the first part of all of said sheep, together with the increase and the wool, until fully paid for. That the payments for the same are as follows: Ten Thousand Dollars ($10,000.00) on or before Jan. 1, 1902, Fifteen Thousand Dollars ($15,000) on or before Jan. 1, 1903, and Fifteen Thousand Dollars ($15,000) on or before Jan. 1, 1904, each and all of said payments bearing interest at the rate of eight per cent per annum from Jan. 1, 1901, said interest payable

annually; that immediately upon full payment for said sheep, the title of the same, together with all increase and the wool clip, is to pass to the parties of the second part and they are to become the sole owners thereof and to that end the party of the first part is to execute a bill of sale for the same to the said parties of the second part.

"It is further agreed and understood that the said parties of the second part are to care for and manage said sheep in a good husbandmanlike manner at their expense and that they are to have the authority and power to sell said sheep or any part of the same or the wool or the increase at a fair market value, but are to immediately apply all amounts realized from said sale upon the purchase price herein stipulated.

"It is further agreed and understood that in the case of failure upon the part of the parties of the second part to pay the amounts above specified at the time specified and in the manner specified, that they are to forfeit all right to purchase said sheep and the party of the first part shall be entitled to immediately take possession of said sheep and the increase and any clip of wool that may be on hand and any expenses incurred by parties of the second part or outlay shall be treated and considered as liquidated damages for all claims to be made by the party of the first part against the parties of the second part hereunder and this contract shall be at an end."

Newland & Co. took possession of the sheep and carried on the business, paying Noble from time to time on the purchase price until they had paid an aggregate sum of about $26,000. They failed, however, to make the payments as they fell due, and it appears from the evidence of both Stewart and Haines that they each notified Noble on several occasions that they could not meet their payments, and that "if he wanted the sheep to come and get them." He did not reclaim the sheep, however, nor did he take possession or demand possession of them until the happening of the event which precipitated the action in this case. About November 1, 1904, Newland & Co. sold to the respondent herein, Ed

Peasley, about 3,200 head of sheep from the flock received from appellant and its increase. Respondent took charge of the sheep thus purchased from Newland & Co., and cared for them until about the 25th of March, 1905, on which latter date the appellant seized the sheep on the range and removed them and took possession and charge of the same. The respondent thereupon commenced this action in claim and delivery to recover the sheep or the value thereof.

It is claimed by the appellant that the contract of sale hereinbefore set forth and out of which this controversy arises is undisputably a conditional sale contract, and did not vest title to the sheep in Newland & Co. as vendees. This contention must be sustained. The contract entered into between Noble and Newland & Co. did not at the time vest the title to the property in the vendees. On the contrary, the title remained in the vendor. This is a well-established rule of law, and has been repeatedly recognized by this court. (*Mark Means Transfer Co. v. Mackinzie,* 9 Ida. 165, 73 Pac. 135; *Barton v. Groseclose,* 11 Ida. 227, 81 Pac. 623; *Kester v. Schuldt,* 11 Ida. 663, 85 Pac. 974; *Harkness v. Russell,* 118 U. S. 663, 7 Sup. Ct. 51, 30 L. ed. 285.) It is urged by the respondent, however, that the power conferred upon the vendees to sell any part of the property so modified the previous reservation of title in the vendor that the vendees could sell the property and give a good title, and that under this power the moment the vendees made a sale title passed to the purchasers through the agency conferred on the vendees to make a sale. The rule is so general that it needs no citation of authority that a contract or agreement must be construed as an entirety, and effect must be given, if possible, to every part of the agreement. Indeed, that is the whole tenor of the case of *Rodgers v. Bachman,* 109 Cal. 552, 42 Pac. 448, cited and quoted from at length by appellant. So let us pursue the intent of this agreement. In the contract under consideration, it was stipulated in one paragraph that the "title is to remain absolutely in the party of the first part," and immediately following that in the next paragraph it stipulates, "it is

further agreed and understood that the said parties of the second part . . . . have the authority and power to sell said sheep, or any part of the same, or the wool or increase, etc.'' A sale contemplates a transfer of title. It could not have been the intention of the parties that the vendees might transfer any of the property covered by the contract and still be unable to give a good title. This is emphasized by the fact that the contract further provides that in the event any sale is made the second parties are ''to immediately apply all amounts realized from the said sale upon the purchase price herein stipulated.'' This latter clause, however, is not a condition precedent to the vesting of title, for the reason that the purchase price could not be realized until the sale is made. A purchaser of such property would not be expected to follow the purchase price into the hands of Noble and see that it was applied on the contract. That is purely a matter of trust and confidence on his part, and was likewise an agreement upon the part of Newland & Co. that they would apply all moneys received from such sales upon the contract. If they should fail to do so, Noble could not by any reasonable interpretation visit the penalty for such failure upon an innocent purchaser of the property. He must rely upon his rights under the contract.

The opinion of the court in the *New Haven Wire Co. Cases*, 57 Conn. 352, 18 Atl. 266, 5 L. R. A. 300, deals with the identical principle here involved, and subd. 5 of the syllabus to that case states the holding of the court as follows:

''The effect of a conditional sale and delivery of the property to the vendee with power to sell it as the property of the vendor and deliver the proceeds to him, is that, upon a sale by the vendee of the property, it ceases to be security to the vendor and the purchaser acquires a good title, and if the vendee does not pay to the vendor, but retains the proceeds of the sale and uses them, the vendee becomes a debtor to the vendor therefor, and the latter has no priority over other creditors.''

That was a case of a sale of steel rods and wire where the title remained in the vendor with power of sale conferred on

the vendee. In course of the consideration of that case, the court says:

"The legal effect of the conditional sale and delivery of rods to the vendee with power to sell them as the property of the vendors and deliver the proceeds to them, is that, upon such sale, the rods ceased to be security to the applicants, and inasmuch as the wire company did not pay over to them the identical proceeds of any sale, but retained the proceeds of all sales and mingled the money with and used it as its own, indistinguishably, it became their debtor, and they became its creditors, upon the same footing as all other creditors, without right of priority. After sale their security was only the fidelity of the wire company to its agreement to hold the proceeds of their rods apart and pay them over."

The principle enunciated in this case is sustained by the following authorities: *Winchester Wagon Mfg. Co. v. Carman*, 109 Ind. 31, 58 Am. Rep. 382, 9 N. E. 707; *Bent v. Jenkins*, 112 Ala. 485, 20 So. 655; *Wilder Co. v. Wilson*, 16 Lea (Tenn.), 548.

Appellant urges that upon a failure on the part of Newland & Co. to make payment, their rights under the contract were forfeited, and that they no longer had the right to make sales of any of the property; that their agency to sell ceased upon a forfeiture of their rights under the contract. The clause of the contract under which this contention is made provides "that in case of failure on the part of the parties of the second part to pay the amounts above specified at the time specified and in the manner specified, they are to forfeit all rights to purchase said sheep. . . . . And this contract shall be at an end." In support of this contention, they cite Page on Contracts, sec. 1160; *Kirby v. Harrison*, 2 Ohio St. 326, 59 Am. Dec. 677; *Hicks v. Aylsworth*, 13 R. I. 562; *Slater v. Emerson*, 60 U. S. 224, 15 L. ed. 626; *Jennisons v. Leonard*, 88 U. S. 302, 22 L. ed. 539. Without an analysis of the authorities cited, it is sufficient to say that they do not sustain the contention made as applied to the facts of this case. We recognize the rule as stated by Page on Contracts, that "at law the general rule is that time is of.

the essence of the contract unless a contrary intent appears upon the face of the contract.'' The author then proceeds to cite a variety of contracts of which time is of the essence. It should be remembered, however, that the application here has more particular reference to the forfeiture instead of the right to purchase. This contract was in part executed. The possession of the property had been delivered to the vendees, and a large part of the purchase price had been paid. The forfeiture clause in the contract was purely and wholly for the protection of the vendor. The forfeiture did not take place, however, by operation of law. It was necessary for the vendor to do some specific act in order to put an end to the contract. He was empowered to ''immediately take possession of said sheep and increase and any clip of wool, etc.'' The vendor failed and neglected to avail himself of this provision of the contract until after the vendees had disposed of the sheep involved in this action. So long as he allowed the parties to continue in possession of the sheep without any change or alteration in the original contract, they will be deemed to have still been operating under the contract; indeed, this is the evidence of two of the vendees, Stewart and Haines, that he had so informed them and that he declined to take possession of the property, but insisted upon them continuing in the possession of the property in the same manner as they had been prior to the breach of the contract. Although the time for payment had expired and the vendor was entitled to reclaim the property, we apprehend that the vendees could have acquired a good title thereto by tendering the balance of the purchase price at any time before the vendor demanded possession of the property. It would have involved an entirely different question if this had been a mere agreement to sell, unaccompanied with a delivery of possession or any change in the respective and relative positions of the parties with reference to the property.

Newland & Co. came into possession of this property by and with the consent of Noble, and their possession was therefore rightful and lawful. Such possession could not be converted into a wrongful and unlawful possession until a breach of the contract and a demand made by the vendor for pos-

session of the property. Until such event should happen, the possession of Newland & Co. was rightful and in accordance with the terms of the contract. Noble made no demand and did no act which indicated a purpose on his part to avail himself of the right to declare the forfeiture. The possession, therefore, must be viewed and considered as continuing under and by virtue of the terms of the contract, and the terms of the agency remained equally as applicable as they did before the time the vendor had the right to avail himself of the forfeiture. Failure to pay at the maturity of any instalment did not *per se* terminate the contract. It is not so stipulated in the contract, and the purpose and intent of the contract clearly negatives such a conclusion. The termination of the contract upon failure to pay was an option running in favor of the vendor alone. To have availed himself of that option would have transferred the possession of the property to the holder of the legal title, and would have likewise terminated the power and agency contained in the agreement, authorizing the vendees to sell the property and vest title in the purchaser. It has been frequently held by the courts. that a conditional sale vendor may do a great many acts which will have the effect of waiving his right to the possession of the property and which will result in vesting the title in the vendee. For instance, it has been held by this and other courts that the commencement of an action against the vendee for the recovery of the purchase price has the effect of vesting absolute title in the vendee. (*Mark Means Transfer Co. v. Mackinzie*, 9 Ida. 174, 73 Pac. 135, and cases there cited; *Kester v. Schuldt*, 11 Ida. 663, 85 Pac. 974.) The vendor, however, cannot both pursue the property *in rem* and at the same time pursue the vendee with an action in debt for the purchase price. (*Bailey v. Hervey*, 135 Mass. 174.)

In *Kimball v. Farnum*, 61 N. H. 348, the court was considering the right of a vendor to maintain the action of replevin for the possession of property contracted under conditional sale, and said:

"There was no unlawful taking of the property by the defendant, for he took possession of it by the consent of the vendor, under an agreed right to take and use the property

and acquire title by payment within a year. There was no unlawful detention, if the defendant had the right of possession until the property was paid for. The vendor extended the time of payment, and made no demand for the property. He did not assert his right to take it, nor claim a forfeiture of the defendant's right to retain the property and complete the payment. He afterward received money, and applied it upon the unpaid balance; and the finding was warranted that the defendant was induced to make payment after the year expired, with an understanding that he still had the right of possession and to acquire full title by completing payment, and that the vendor was estopped from denying that right."

Respondent acquired a good title to the property by virtue of his purchase from Newland & Co., and the taking by appellant was therefore wrongful and without authority in fact or law. The judgment is *affirmed*, with costs in favor of *respondent*.

Sullivan, C. J., concurs.

Stewart, J., was not present at the hearing and took no part in the decision.