DOROTHY C. EDWARDS, *Plaintiff in Error,* v. THE BALDWIN PIANO COMPANY, A CORPORATION, *Defendant in Error.*

Opinion Filed February 25, 1920.

1. A contract whereby pianos are consigned to a dealer for sale, is binding upon the creditors of the consignee.

2. A contract whereby pianos are consigned to a dealer for sale is binding between the consignor and consignee, but a purchaser from such dealer acquires good title as against such consignor.

3. A consignment of goods for sale does not create the relation of vendor and purchaser but the relator of principal and agent.

4. An important inquiry in the case at bar was as to the intent of the parties.

5. A conditional sale is valid and binding between the parties as well as upon the purchasers and creditors of the conditional vendee, with the exception if, however, the personal property is sold to a dealer in such goods for the purpose of resale, or if consent to a resale be given, a bona fide purchaser acquires good title as against the conditional vendor.

A Writ of Error to the Circuit Court for Marion County; W. S. Bullock, Judge.

Judgment affirmed.

*Hampton & Trantham,* for Plaintiff in Error;

*Anderson & Anderson,* for Defendant in Error.

HORNE, Circuit Judge.—On November 23rd, 1916, the defendant in execution appears to have been a dealer in pianos, and by virtue of a rent contract with the plaintiff was occupying a building of hers in the city of Ocala, and theretofore and thereafter continued to be the tenant of the plaintiff and continued to be such dealer until the issuance of the distress warrant in this case on May 25th, 1917, and on said November 23rd, 1916, the defendant entered into a contract with the claimant.

The contract between the claimant and the defendant in execution provides that all pianos ordered or received by the defendant shall be held on consignment for sale, and that the title to the instruments, and the proceeds

when sold, are to remain in the claimant. Such consignment and such holding and the title remaining in claimant subject to terms and conditions as follows, in substance:

1. The defendant to pay all expenses after the instrument leaves Cincinnati, all expenses of collection of proceeds of sale made by him, recording and attorneys' fees, is responsible for the safekeeping, and to keep them insured in name of claimant at consignment price.

2. The defendant to profit by selling the instrument for more than the value fixed at the time of consignment, plus such expenses, he to report full settlement for all sales as made, if sold for cash to remit the wholesale price or value in cash, and if on time to send original contracts of sale, mortgages or liens, and shall retain for his own use only one-half the cash payment, sending under all circumstances money or paper to cover the wholesale price, and that his customers shall pay claimant at least six per cent per annum on deferred payments, and the defendant guarantees in case of sale the payment to claimant the wholesale price with six per cent interest.

3. The defendant agrees that if any of his customers fail to pay as agreed that he will repossess the instrument at his expense, or pay for its being done, and failing to repossess that he will pay, and if not repossessed that the instrument shall be disposed of by reconsignment or return to claimant.

4. The defendant agrees to sell under supervision of claimant, and when he makes one that is not satisfactory, to make it so in one of three ways.

5. The instruments may be returned any time at the option and expense of defendant, or the return may be required at any time at the option of the claimant at the

expense of defendant, and defendant agrees to pay certain sums for depreciation and for the use of instruments where the relation is ended by a return of a piano.

6.   The defendant agrees to try to sell within four months of the consignment of an instrument, and agrees to compensate the claimant for his failure to make such sale by paying as compensation for the use thereof six per cent per annum for such further time as it may remain unsold.

7.   The defendant agrees to make monthly reports as to all instruments consigned to him.

8.   The defendant agrees that his commissions can not be assigned or transferred without the consent of claimant, but leaves the commission with claimant for security for any indebtedness or liability whether arising under the contract or otherwise.

9.   The agreement was that it be executed and construed under the laws of Ohio and that nothing contained in the writing should in any sense be construed as constituting a sale of the instruments and then there is an agreement as to termination of the contract, and there were certain rules for the disposition of instruments and minimum terms on time sales.

The pianos in question were shipped to the defendant in December, 1916, under the contract; reports as provided in the contract were made as to them on December 30th, 1916, January 31st, 1917, February 19, 1917, and March 15th, 1917. The levy of the distress warrant was made May 25th, 1917, returnable June 2nd, 1917, for the rent of a store building from November 1st, 1915, to May 1st, 1917, and which distress proceeding resulted in final judgment on June 12th, 1917. The claim proceeding was instituted on June 28th, 1917, and this finally

resulted in an instructed verdict for claimant on the 17th day of May, 1918, and in judgment in accordance therewith on the same day.

It will be observed that some of the rent had accrued before the making of the contract between the claimant and the defendant, and much more of it before the pianos were received by the defendant. Under these facts the learned Circuit Judge directed a verdict for the claimant, and the question is thus presented whether or not the plaintiff in execution acquired a lien upon such property so brought upon the leased premises.

The contract between the claimant and the defendant is not a contract of sale, and the relation of vendor and purchaser was not contemplated by them. Was the relation created that of employment of the defendant by the claimant to receive on consignment and to sell as agent pianos in accordance with the agreement between them, or was the defendant in a sense a purchaser, a mortgagor or the owner of such property? Or did the relation of debtor and creditor exist? And this decision must be made independently of any recordation statute.

There is and in the very nature of the case there can be no question of constructive notice to affect the contention of the plaintiff in execution. Had the pianos in question been sold to a purchaser by the defendant and the sale completed by payment and delivery such sale would have invested the purchaser with good title as against claimant whether it received payment from the defendant or not, for the reason that both the claimant and the defendant intended and contemplated at the time they entered into their contract, and at all times thereafter while it was in existence that such instruments should be sold by defendant in the course of business to some purchaser. The claimant would have

been estopped. See Winchester Wagon Works & Mfg. Co. v. Carman, 109 Ind. 31, 9 N. E. Rep. 707, 58 Am. Rep. 382, where the rule is correctly announced as follows: "When a manufacturer and wholesale vendor of wagons sells upon credit and delivers them to a retail dealer for the apparent and implied purpose of resale, a condition that the title shall remain in the vendor until the purchase price is paid, is fraudulent and void as against a purchaser from the vendee." Se also Peasley v. Noble, 17 Idaho 686, 107 Pac. Rep. 402, 134 Am. St. Rep. 270, where the principle is recognized and upheld, and see Note where many applications of the rule are cited and a learned discussion of the subject in hand is given— and especially that the sub-purchaser is under no obligation to see to the application of the purchase money and the contemplation of the parties are of great importance in arriving at the right in such matters.

The writer assumes that the contract between complainant and defendant would form a basis for a fiduciary relation the necessary predicate for conviction of embezzlement.

There is hardly any conflict among the authorities as to the distinction between a sale and a consignment of personal property for sale, the difficulty arises only in an application of the principle to the particular transaction. * * * The primary test as to the character of the contract is the intention of the parties * * *. Vermont Marble Co. v. Brow, 109 Cal. 236, 41 Pac. Rep. 1031, 50 Am. St. Rep. 37.

The important question in this case in the mind of the writer is whether or not under the circumstances the pianos in question had been simply consigned by claimant to defendant for sale, or whether or not under the law he was such a purchaser of the pianos as to ren-

der them liable to levy and sale under an execution against the defendant in execution, or whether the contract under the circumstances was colorable and in fraud of creditors? Unless the pianos became and were defendant's property under the law they were not subject to levy and sale in the distress for rent proceeding. Ruge v. Webb Press Co., 71 Fla. 536, 71 South. Rep. 627.

A sale may be defined "a transmutation of property from one man to another in consideration of some price or value." "A transfer of the property in a chattel for a consideration." "Transfer of the absolute or general property in a thing for a price in money * * * that it means at all times a contract to pass rights of property for money which the buyer pays or agrees to pay to the seller for the thing bought and sold." 23 R. C. L. 1186.

In the case of a sale an agreed price is essential, but it is altogether needless in the case of a mere exchange, but where property is taken for a fixed money price the transfer amounts to a sale whether the price be paid in money or in goods. 23 R. C. L. 120. "Where a seller retains title to thing sold until the price is paid, the transaction is a conditional sale." Bass, Heard & Howle v. International Harvester Co. of America, 169 Ala. 154, 53 South. Rep. 1014. A contract of sale by which the title to goods is to remain in the vendor until paid for or sold in due course of trade by the vendee, to whom they are delivered, is valid, and a purchaser from him in due course of trade takes a good title, while others not so purchasing can not rely upon his bare possession as conclusive evidence of title. Pratt v. Burhans, 84 Mich. 487, 47 N. W. Rep. 1064, 22 Am. St. Rep. 703. The case of Ludden v. Hazen, 31 Barb. (N. Y.) 650, has been cited by counsel and is authority for the statement "the law tolerates a

separation of the apparent from the real ownership of chattels when the honesty of the transaction is made to appear. But when the purpose for which the possession of the property is delivered to the buyer is inconsistent with the continued ownership of the claimant, the transaction will be presumed fraudulent against purchasers and creditors. The form of the transaction will be deemed and held colorable and the title held to have vested absolutely in the buyer." Ludden v. Hazen is cited, approved and distinguished from other cases in the well considered case of Armington v. Houston, 38 Vt. 448, 91 Am. Dec. 366, holding in a case where the vendee was in possession of goods with permission to use and consume the goods (which were edibles) before they were paid for, without the further consent of vendor who retained title till the goods were paid for," as purchaser and creditors must acquire their title to the property through the vendee, they can acquire no other title or right to it than the title or right which he himself has in the property" * * * "If the plaintiff ceased to own the goods, it was by virtue of the provisions of the contract of sale and because Thompson had a right to treat the contract of sale as an absolute sale of the property." This case is cited 12 Notes to American Decisions 648, as having been cited Hirsch v. Steele, 10 Utah 18, 36 Pac. Rep. 49, holding conditional sale of merchandise to be resold by vendee valid as against his attaching creditors.

This court has repeatedly recognized the law to be that a conditional sale is valid and binding between the parties, as well upon purchasers and creditors of the conditional vendee. Campbell Mfg. Co. v. Walker, 22 Fla. 412; Dannelly v. Russ, 54 Fla. 285, 45 South. Rep. 496; Onyx Soda Fountain Co. v. L'Engle, 53 Fla. 314, 43 South. Rep. 771, and that there is an exception to this general

rule is recognized. Armington v. Dempsey, 77 Fla. 160, 81 South. Rep. 111; Chancy v. Lanier, 76 Fla. 443, 80 South. Rep. 312; American Process Co. v. Florida White Pressed Brick Co., 56 Fla. 116, 47 South. Rep. 942.

The rule in cases of conditional sales as laid down by Cyc. 680-681 is approved, as follows: "If, however, the goods are sold to a retail dealer for the purpose of re-sale, or if consent to a resale in the ordinary course of trade is given, a bona fide purchaser acquires a good title." Consign in mercantile law, as defined by 12 C. J. 526, for the purposes of the case at bar, is: "The term has a well defined legal meaning and signifies * * * to deposit with another to be sold, disposed of or called for * * * to send goods to an agent * * * to be sold, to send or transfer goods to a merchant or factor for sale, * * * the term implies an agency and applied in a commercial sense means that the property is committed or entrusted to the consignee for care or sale, and does not by any express or fair implication mean a sale by one or purchase by another," citing Sturm v. Boker, 150 U. S. 312, 37 L. Ed. 1093, 14 Sup. Ct. Rep. 99, and to the same effect, 8 Cyc. 587.

In the well considered and annotated case of Fleet v. Hertz, 201 Ill. 594, 66 N. E. Rep. 858, 94 Am. St. Rep. 192. In 1892 Fleet was a dealer in furs in New York and Kesler, a manufacturer of furs into garments and selling furs and garments at wholesale and retail, and within four years before that time Fleet had sold to Kesler on credit several hundred dollars' worth of furs and these were not paid for in full, Fleet wrote Kesler in substance that he would try to fix it so he could deal with him explaining that he was handling furs on account of others on a small commission; that the mercantile agencies did not regard Kesler in a very good light and declining to

sell to him outright expressed a desire to help Kesler and proposed to consign an amount of goods upon the agreement that they be handled for Fleet's account, to hold the proceeds in trust, making settlements thirty, sixty and ninety days as soon as money may be collected, and suggested what goods should be ordered and specified discounts to be allowed for thirty, sixty and ninety-day settlements respectively. Kesler replied expressing joy at the discovery of the way upon which Fleet could do business with him in safety, etc. Fleet began shipping goods under the arrangements; in all bills the goods were mentioned as consignments and receipt was given for the goods as being on consignment for sale upon the terms indicated. The goods remaining unsold were levied upon by creditors. The Circuit Court construed the agreement to be a sale of the goods by Fleet to Kesler, and this was held to be error. There was no indebtedness to Fleet; the only liability was to pay the agreed price when the goods were sold and paid for. The clear intent of Fleet was not to sell Kesler any more goods for the reasons stated by him was an offer to supply certain goods to be sold by Kesler as agent. The intent disclosed is not to sell goods or to create the relation of vendor and vendee or the relation of debtor and creditor, but was to create the relation of principal and agent; there is no provision whether Kesler may become the purchaser, but he may sell as agent; there was no option to return, nor a sale with intention of title. There was no price fixed for the sale of the goods, but a price was fixed at which Kesler should account to his principal. It was a consignment of goods by Fleet to Kesler to be sold for the account of Fleet. The owner could not of course recover the goods from a person to whom his agent had sold them for he had authorized such sale and is estopped. The

parties Fleet and Kesler did not regard the transaction as one of sale, but of consignment. There was no intent to create a lien in favor of Fleet to secure him for the purchase money, and in the opinion of the writer this case and the case of Lens v. Harrison, 148 Ill. 598, 36 Sup. Ct. Rep. 567, should control and settle the case at bar.

As a creditor the plaintiff must acquire her right to property through Lattner. She can acquire no other right than he had; if the claimant in this case ceased to own the property in question it was by virtue only of his contract with Lattner, and because he had a right under the contract of consignment as one of sale, and if Lattner had this right plaintiff had the same right. It was unquestionably the right and privilege of the claimant to consign its goods to Lattner for sale by him for them, its doing so was no fraud upon any one. In making consignments for sale the physical possession is generally transferred to the consignee, but the title and the right of control not inconsistent with the contract of consignment remain with the consignor. There is no suggestion in the record that the transaction between claimant and defendant was otherwise than one which was honest, and made in entire good faith. The writer does not think there is any ground to claim that the claimant loses its right to the property by making an assignment which in its details is in all respects lawful and proper.

There was nothing in the conduct of the claimant as disclosed by the record in this case that would estop it or make it in any way inequitable or unjust for it to claim the property in question as its own and not liable to levy and sale under the execution mentioned in this case. And in the opinion of the writer the jury would

not have been justified in rendering a verdict adverse to the claimant, hence it is the opinion of the writer that the judgment of the Circuit Court for Marion County should be affirmed, with costs.

PER CURIAM.—The record in this cause having been considered by this court, and the foregoing opinion prepared under Chapter 7837, Acts of 1919, adopted by the court as its opinion, it is considered, ordered and adjudged by the court that the judgment herein be and the same is hereby affirmed.

BROWNE, C. J., AND TAYLOR, WHITFIELD, ELLIS AND WEST, J. J., concur.