AUBURN AUTOMOBILE CO. v. NAMOR CORP., *et al.*

149 So. 801.
Division B.
Opinion Filed September 22, 1933.
Rehearing Denied Oct. 19, 1933.

*Miller, McKay, Dixon & DeJarnette,* for Appellant;

*Patterson & Knight, Marshall F. Sanders* and *Clark & Ellis* and *William J. Dunn,* for Appellees.

PER CURIAM.—This is an appeal by Auburn Automobile Company, an Indiana corporation, from the final decree of the Circuit Court disallowing the claim of the appellant as a preferred claim against Habig Motor Company, a Florida corporation.

The bill of complaint was filed by Namor Corporation in the way of a creditor's bill. A receiver was appointed. The appellant here filed its claim with such Receiver. The claim was evidenced by notes and chattel mortgages made and executed by the defendant to the City National Bank of Miami. The chattel mortgages were never recorded. The claimant contended in the court below, and contends here, that the notes and the chattel mortgages were executed to City National Bank of Miami as agent and trustee and in trust for Auburn Automobile Company, the claimant.

Many questions are attempted to be presented for review here, but the record discloses that it is only necessary to determine one question to dispose of this case. The question is, whether or not the notes and mortgages were given to the City National Bank as the Agent and Trustee of and in trust for Auburn Automobile Company and whether or not Auburn Automobile Company was the owner of such securities at the time it filed its claim in the court below.

There was one note for $2,456.50 dated April 17, 1930; one note for $2,459.50 dated April 25, 1930; one note for $2,459.50 dated April 28, 1930; one note for $1,305.00 dated April 28, 1930; one note for $920.00 dated July 31, 1930; one note for $970.00 dated September 9, 1930; one note for $2,317.50 dated October 15, 1930; one note for $2,317.50 dated November 8, 1930; one note for $2,459.50 dated November 8, 1930; one note for $1,166.00 dated November 14, 1930; one note for $960.00 dated November 14, 1930,

and one note for $2,624.50 dated November 14, 1930. Each note was secured by a chattel mortgage on a particular therein-described automobile and each note carries with it a trust agreement, typical of which is the following language:

"Miami, Fla., November 14, 1930.

"RECEIVED from CITY NATIONAL BANK IN MIAMI the following property held by the Bank:

"Cord Phaeton Sedan Serial No. L29/292879 Motor No. FD5712A

and in consideration thereof we hereby agree to hold said property in trust and to keep insured against fire (loss, if any, payable to the City National Bank in Miami for the following purposes, viz.:

and we will return the said property immediately upon demand by the Bank with due diligence to the Bank, the intention of this agreement being to protect and preserve unimpaired the lien of ............................ on the property.

"Habig Motors Company (SEAL)
"B. L. St. Peters,
"Secretary-Treasurer.
"Chas. W. Habig,
"By B. L. St. Peters, Atty. in Fact."

The record shows that each note was given in payment of a demand draft with letter of authority thereto attached, of which the following is typical:

"AUBURN AUTOMOBILE COMPANY,
"AUBURN, INDIANA,
"November 7, 1930.

"No. c-2109.

"ON DEMAND PAY TO THE ORDER OF
2509.00 $ City National Bank, Miami, Florida,
Two Thousand Five Hundred nine and 00/100 DOLLARS

(with exchange and collection charges)

"Please do not present this draft until arrival of shipment.

AND CHARGE TO THE ACCOUNT OF

"To Habig Motors Company,

"1917 Biscayne Blvd.,

"Miami, Fla."

"Through

"AD*100, 5-29, 5M-Boda."

"Please be sure and make remittance on this item direct to the Auburn Automobile Co., Auburn, Ind.

"AUBURN AUTOMOBILE Co.,

"By: G. G. Johnson."

"AUBURN AUTOMOBILE COMPANY.

"No. c-2109.

"Auburn, Ind., November 7, 1930.

"We enclose for collection and remittance on Sight Draft

On Habig Motors Co.,
Miami, Fla.

FOR

$2,509.00.

"No PROTEST.

"Delivery papers attached (if any) only on payment of Draft.

"Cord Phaeton No. 129-292869 B&O 291548.

"Yours truly,

"AUBURN AUTOMOBILE COMPANY."

The record fails to show that the Bank acted as Agent or as Trustee for the Auburn Automobile Company, but the record shows by the documents above referred to that

the only authority which the Bank had was to collect from the drawee the amount of the draft and to remit the same to Auburn Automobile Company.

The record further shows no assignment or endorsement of either the notes or the mortgages from the Bank to Auburn Automobile Company prior to the filing of the claim. The books of the defendant corporation for which the Receiver was appointed show the entire indebtedness due to City National Bank and nothing due for automobiles to Auburn Automobile Company. Voluminous evidence was taken before the master and in his findings concerning this claim he said:

"In the matter of the claim of Auburn Automobile Co., this claim has been objected to among other reasons that the said claimant has no basis upon which their claim could be allowed, and if such claim is allowable to anyone it is to the City National Bank in Miami, and it appears to me that such contention is correct, and this claim, if such claim there be, should have been filed by said City National Bank in Miami, as it appears from the exhibits and testimony in this cause said City National Bank is the party to whom such amounts are due and payable, if such amounts are due and payable to anyone. However, if this is not a correct deduction from the exhibits and testimony before me, and if said claimant, Auburn Automobile Co., are correctly the claimants in this cause, then I find as follows:

"That this claim is based on cars shipped by claimant to Habig Motors Company at Miami, Florida, and which cars were shipped, sending Bill of Lading with draft for purchase price, attached, to City National Bank, and upon arrival in Miami of such shipment of automobiles, the Habig Motors Company was notified. Whereupon said

Habig Motors Company gave to said City National Bank and said bank accepted the following:

"1. A promissory note in the amount of the draft and charges.

"2. A purported 'Bill of Sale' of the automobile from Habig Motors Company to said City National Bank.

"3. A third paper called 'Trust Receipt.'

"all in the form as attached to the sworn proof of claim and filed before me in this cause, and the testimony and exhibits disclose that all the transactions upon which the claim is based were similar. At first glance this appears to be a somewhat anomalous transaction, being in form obviously not a conditional sale and not in the usual form of a mortgage. The claimant claims a preference for proceeds of sales of the automobiles, which it claims to trace into the Receiver's hand, to-wit, the proceeds of one car for which the money was in the cash register at the date of the Receiver's appointment, and for proceeds of other cars sold by the Receiver. As contended by counsel for objecting creditors and the Receiver, even disregarding the point as to whether the claimant, Auburn Automobile Company, has any basis for its claim, and whether or not as a matter of fact, the claim, if any such there be, was that of the City National Bank in Miami, the transaction at best on its face constitutes nothing more than an ordinary mortgage, and therefore invalid as to creditors because never recorded, and therefore, the said claimant having placed itself in this position is not entitled to any preference of its claim over other creditors, if it is entitled to any claim at all.

"I, therefore, find that if said claimant, Auburn Automobile Co., is entitled to any claim at all, it is only as a general creditor in the sum of $25,179.50."

The Chancellor sustained this report of the Master and disallowed the claim of Auburn Automobile Company. The appeal is from that decree. The evidence amply supports the findings and justifies the conclusion that if Auburn Automobile Company had a claim for the amount presented it was against City National Bank and could not be maintained against the defendant in the court below to the prejudice of other creditors of that defendant. Therefore, it becomes unnecessary to discuss in detail other questions which might be pertinent if the above state of facts did not exist.

So it is that the decree appealed from should be affirmed and it is so ordered.

Affirmed.

WHITFIELD, ELLIS, TERRELL and BUFORD, J. J., concur.

DAVIS, C. J., and BROWN, J., dissent.

DAVIS, C. J. (dissenting).—My view of this case is that where a manufacturer of automobiles ships cars and sends the bill of lading attached to a sight draft to a bank for collection, and the bank surrenders the bill of lading, and takes in exchange therefor a bill of sale, a trust receipt and a collateral form note, payable to itself, and endorses and delivers the collateral papers to the manufacturer, and the particular cars covered thereby come into the hands of a receiver appointed on a creditor's bill for the affairs of the dealer who executed the note and the collateral papers, that the receiver holds the cars coming into his hands and their proceeds in trust for the purpose of paying the note and sight draft mentioned, because the latter represents the purchase price of the cars the unconditional title to which as between the manufacturer and the dealer was never intended to vest until after full payment of the purchase price. Therefore I think the decree appealed from

should be reversed and the cause remanded for appropriate procedure in accord with this view of the transactions involved. The only thing which in my judgment could possibly preclude the manufacturer from enforcing his claim for the purchase price of the cars that have passed into the receiver's hands against the cars themselves or their identified and traced proceeds would be some estoppel pleaded and sustained to bar the claim on the ground of estoppel.

In the case now before us a dealer in automobiles is shown to have obtained possession (not title) of cars purchased from a manufacturer, by executing a bill of sale, trust receipt and collateral note to the bank to which had been sent a bill of lading with sight draft attached for collection before the bill of lading should be surrendered. The bill of lading and that alone entitled the dealer to secure possession of the automobiles from the carrier which had them in charge. The title as distinguished from the right to possession of the cars remained in the manufacturer as long as the bill of lading remained in the bank with sight draft for the purchase price of the cars attached.

The shipment of automobiles by a manufacturer to a dealer through the medium of a bill of lading with sight draft for the purchase price attached, is nothing more than a conditional sale of the automobiles, the condition being that the consignee will pay the draft and thereby take up the bill of lading, secure possession and acquire the title to the cars by so doing. Such being the nature of the shipment with bill of lading subject to payment of a sight draft for the purchase price attached, the bank holding the bill of lading and sight draft was without power as well as without any right to change the nature of the transaction from that of a conditional sale to something else, by surrendering the bill of lading without payment of the sight

draft and taking in lieu of payment of the sight draft something else, to-wit: a bill of sale, trust receipt and collateral note.

If, therefore, the automobile dealer in the first instance only acquired *possession* under a transaction for conditional sale by the means hereinbefore mentioned, was the nature of that transaction changed from that of an outright sale by reason of the mere fact that the manufacturer who held the title under conditional sale, accept from the bank through endorsement to him, the trust receipt, bill of sale and collateral note? My view is that it was not and that the transaction at all times was one of conditional sale and such as should be disposed of on the basis in determining the rights of the parties here involved.

The law is well settled in this State that conditional sales agreements do not have to be recorded to be effective and binding between the parties until the purchase price is paid, and it is also well settled that a conditional sale agreement is binding upon the creditors of the buyer, though the agreement is not recorded. Edwards v. Baldwin Piano Co., 79 Fla. 143, 83 Sou. Rep. 915. The only exception to this rule is that where consent to a resale of the property is given to a dealer who is the conditional vendee, that a *bona fide* purchaser of the car from the dealer acting under the power of resale given, will thereby acquire a good title as against the conditional seller. Edwards v. Baldwin Piano Co., *supra;* Commercial Credit Co. v. Neel, 91 Fla. 505; 107 Sou. Rep. 639. It has never been held that a mere creditor of the conditional vendee is a *bona fide* purchaser under the rule just stated. The *bona fide* purchaser must be one who has purchased under the power of resale given by the conditional vendor to his vendee, and this is only because of the rule that one cannot confer a right upon

another and then disclaim it to the prejudice of a third party who has acted on the faith of it.

There is no particular magic in the legal efficacy of a "creditor's bill" as against the efficacy of an execution at law levied for the same purpose. A creditor's bill is in aid of and merely enforces the execution issued on a judgment for debt, when the aid in equity is necessary to reach assets that the execution itself cannot reach. It confers no superior right or equity on the complainant and other creditors than they have without such bill, except to reach what cannot otherwise be reached because of the status of the legal title being not in the debtor.

In the case at bar an execution certainly could not have been levied and maintained against the cars while in the dealer's show rooms subject to the transaction I have just related, because the manufacturer's title to the cars evidenced by the antecedent happenings, would preclude that. It seems to me, therefore, that when a receiver appointed under a creditor's bill is in possession of cars the title to which is still in the manufacturer, as a conditional vendor, that the cars should be decreed to be held in trust for the vendor, and that the receiver should be charged as trustee for the vendor with reference to the proceeds of same.

If, as has been suggested, the National City Bank exceeded its authority from the manufacturer, it certainly cannot operate to enlarge the rights of the local dealer and his creditors against the manufacturer's property. The rule is that such an unauthorized act confers no title. Miller v. Chase & Co., 88 Fla. 500, 102 So. 553.

No estoppel against the manufacturer has been pleaded or shown and I therefore hold to the view that the manufacturer's claim must prevail against the common creditors

of the local dealer who can only assert an interest against the receiver to the extent that they had one against the debtor whom they have by their creditor's bill in equity pursued.