**Herbert MEYERSON, Appellant,**

v.

**JEWELERS MUTUAL INSURANCE COMPANY, Appellee.**

No. 16905.

United States Court of Appeals Fifth Circuit.

May 9, 1958.

Rehearing Denied May 30, 1958.

Mark Hulsey, Jr., Glickstein, Crenshaw & Glickstein, Jacksonville, Fla., for appellant.

Charles Cook Howell, Philip A. Webb, III, Howell & Kirby, Jacksonville, Fla., for appellee.

Before CAMERON, JONES and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

The question here is whether the Court properly granted summary judgment. In doing so it held that the loss of jewelry displayed in a show window of the retail dealer to whom the Assured had consigned the diamonds was not covered by reason of the exclusion [1] of "property exhibited by the Assured" in showcases or windows away from the Assured's premises.

Since the exclusion concerned "property exhibited by the Assured" and it was undisputed that the Assured personally had nothing to do with the display of the jewels in the show window, the District Court, to reach this result, had to

---

1. The policy provided under "Insuring Conditions":

"5. This policy insures against all risks of loss of or damage to the above described property arising from any cause whatsoever except:

\* \* \* \* \*

"(L) Loss of or damage to property exhibited by the Assured in show cases or show windows elsewhere than at the premises of the Assured as referred to in this policy except as may be endorsed hereon."

hold as a matter of law that the retail consignment dealer was the agent of the Assured.

■ Meyerson was the Assured. His business, accurately represented to the Insurer, was approximately 90% wholesale and 10% retail. His place of business was in a Jacksonville office building. In an inventory, the maximum amount of which did not exceed $132,000 for the previous year, the Assured declared in Item 22 of the policy Proposal, subsequently attached to the policy in suit, that "The estimated average daily amount of property in the custody or control of others, * * * was $90,-000," or roughly 67% of the entire inventory. Substantially all of this was on memorandum consignments to retail dealers of the kind involved here.[2]

· The importance of this seems to have completely escaped the District Court for this was the basis for a major coverage requested by the Assured, expressly granted by the Insurer, and for which a substantial additional premium had been paid. In addition to coverage in the amount of $50,000 "in respect of property at the Assured's premises as described," the policy under Clause 2(B) (3) granted coverage in the amount of "$10,000.00 in respect of property which is * * * (3) in the custody of a dealer in property of the kind insured hereunder not employed by or associated with the Assured * * *."[3]

■ Unless this "off premises show case" exclusion was decisive, there can be no doubt that the policy covered the jewels in the retail dealer's hands here. The diamonds had previously been sent by Meyerson on memorandum to this retail dealer in Sarasota, Florida. The Assured had had extensive transactions with this dealer who was one of approximately forty-four retailers with whom Assured dealt. In accordance with his practice and which the counter-affidavits showed was a part of the custom of the jewelry business, the Assured sent out to this dealer a shipment of jewelry under a memorandum. This was a sort of invoice form on which the merchandise was listed in appropriate columns under a printed heading which prescribed the general terms.[4]

2. In the Proposal signed by him and later attached to the policy when issued, the Assured, respecting "18. Warranties as to Property Insured * * *" declared in writing: "Entire stock is kept in 3 safes at all times except such goods that is in bank vault and goods that are out on consignment with retail jewelers."

Additionally, whether admissible to extend or vary coverage as such, and as to which we need here make no determination, cf. Baker v. Nason, 5 Cir., 236 F.2d 483, 491; Navajo Production Corp. v. Panhandle Eastern Pipe Line Co., 5 Cir., 132 F.2d 1, 3; Petroleum Financial Corp. v. Cockburn, 5 Cir., 241 F.2d 312, 317; Fidelity-Phenix Fire Insurance Co. v. Farm Air Service, Inc., 5 Cir., 255 F.2d 658, the letter exchange in the issuance of the predecessor policy (of which the one in suit was a renewal) would be admissible to show, if relevant, a knowledge by the Insurer of the nature of the consignment or custody of goods affirmatively covered under Clause 2(B) (3) and declared in Item 22 of the Proposal.

3. From the manner in which it was handled in the initial predecessor policy, where Item 22 of the proposal was initially answered "nil" resulting in the exchange of letters, note 2, supra, apparently the Insurer, before it would indicate 2(B) (3) coverage for a specified amount, required that the *Assured's* proposal show in Item 22, either initially or by an endorsement, the dollar amount of such goods in the custody of others. In the predecessor policy this was done by a special endorsement which stated:

"Effective May 12, 1954 and in consideration of ADDITIONAL premium of $96.00, it is mutually understood and agreed that the answer to question(s) No. 22 of the Proposal attached to and forming part of this policy is amended to read as follows: No. 22—$6500.00."

In the policy in suit, both in the coverage section and by the Assured's answer to Item 22 of the Proposal showing $90,000 merchandise in custody of others, the 2(B) (3) coverage was completed for $10,000.

4. "The goods described and valued as below are delivered to you for examination and inspection only and remain our property subject to our order and shall be returned to us on demand. Such mer-

In the trade, a wholesaler using consignment retail outlets forwards merchandise from time to time without first receiving a specific order from the retailer. The retailer keeps the merchandise for a period of 30 to 60 days after which time the wholesaler generally recalls it in exchange for other goods to assure that the retailer has a fresh stock. While the printed terms, note 4, supra, provide that "No right or power is given * * to sell, pledge, hypothecate or otherwise dispose of" the merchandise, the facts, which the Assured sought the opportunity to prove on a trial, showed that under this system the dealer treated this virtually as a part of his stock in trade. As to the sale itself, the custom seems to make it effective as between the wholesaler-consignor and the retailer-consignee simultaneously with the purchase of an item by the retailer's customer. Such a retailer does, and must, display the merchandise, and it is the dealer, not the asserted principal (wholesaler), who determines the price at which it will be sold. All the dealer must do is account for the merchandise in kind or remit to the wholesaler the stated wholesale price.

Since affirmative coverage under the policy was requested and granted by virtue of this very type of "custody of a dealer * * * not employed by or associated with the Assured," the same custody cannot, for the purpose of defeating coverage, be deemed that of the Assured's agent as a matter of law. And yet that seems to be what the Insurer contended and the Court determined.

On the ground that in the Proposal the Assured had stated that no insurance was desired for merchandise displayed in show windows or cases not on Assured's premises,[5] the Court held that the exclusion 5(L), note 1, supra, automatically applied since such coverage had not been "endorsed hereon."

To do this, however, it had to hold as a matter of law that when a retail dealer " * * * not employed by or associated with the Assured * * * " in whose custody the merchandise is otherwise covered, displays it in a showcase, it amounts to property "exhibited by the Assured" since the retail dealer is the agent of the wholesaler. This rests in part on the fact that in discussing the unique nature of the relationship arising out of a consignment which emphasizes that there is no legally enforceable obligation on the part of the consignee to accept and pay for the goods, no relationship of debtor—creditor, buyer—seller, see., e. g., Edgewood Shoe Factories v. Stewart, 5 Cir., 107 F.2d 123, 126, words have been used likening it to an " * * agency [which] applied in a commercial sense means that the property is committed or intrusted to the consignee for care or sale, and does not by any express or fair application mean a sale by one or purchase by another." Edwards v. Baldwin Piano Co., 79 Fla. 143, 83 So. 915, 918.

■ Certainly the relationship of agency for the purpose of the display of merchandise cannot arise as a matter of law out of anything as equivocal as the word "consignment," whether used colloquially in the context of the customs and practices of the jewelry trade or as used for other purposes by Courts and lawyers. The facts reflected in the depositions, the discovery answers, and the counter-affidavits give rise to variable inferences of fact. We need not now determine whether the facts shown here, or the equivalent of them on a trial, would be suf-

chandise, until returned to us and actually received, are at your risk from all hazards. No right or power is given to you to sell, pledge, hypothecate or otherwise dispose of this merchandise regardless of prior transactions. A sale of this merchandise can only be effected and title will pass only if, as and when we the said owner shall agree to such sale and a bill of sale rendered therefor."

5. The Proposal states:
"15. Show Case and Show Window Displays of Proposer *Not at Premises* Occupied by Proposer. If Proposer desires insurance on property displayed in show cases or show windows in building lobby or elsewhere than at premises occupied by Proposer, furnish full particulars of each display .......... none .......... "

ficient to *permit* a finding of fact that, under the special context of this policy and especially coverage 2(B)(3) the retail dealer under the consignment was an agent. That is not before us since the Assured did not move for summary judgment. We do say, however, that it is not sufficient to *compel*, as a matter of law, the holding that agency does exist. It was at best a fact issue, and summary judgment cannot be used to resolve it. Bruce Construction Corp. v. United States, 5 Cir., 242 F.2d 873.

The consignment retail dealer was entitled to exhibit the merchandise in show windows and cases on his own premises. Such display would become "property exhibited by the Assured" only if, as to that act, the consignment retail dealer was, and was acting as, the agent of the Assured. On this record, that crucial decisive holding could not be made by the Court as a matter of law. The cause must be reversed for a trial and for further and other consistent proceedings.

Reversed and remanded.